DOTY, administrator, *vs.* WRAY, administrator.

| 66 | 153 |
|----|-----|
| 115 | 899 |

A conveyance to a woman for life, with remainder to her children, coupled with a power in her to convey to trustees to hold until her youngest child becomes of age, and then to divide among all the children, with rights of survivorship between them in case some should die without issue; and in the event all should die leaving no issue, then over to certain children of the donor—vests the remainder absolutely·in the children of the tenant for life on the youngest attaining majority, and the death of all or the last one after that event, without issue, will not entitle the donee's children to the property.

Deeds. Estates. Before Judge FLEMING. Chatham Superior Court. June Term, 1880.

Reported in the decision.

CHISHOLM & ERWIN; A. P. & S. B. ADAMS, for plaintiff in error, cited Code, §2757; 30 *Ga.*, 168; Code, §2248; 2 Bl. Com., 108; 5 Humph., 47-8; 15 *Ga.*, 521; 30 *Ib.*, 977.

S. YATES LEVY; R. E. LESTER, for defendant, cited Code, §2697; 16 *Ga.*, 615; 32 *Ib.*, 589; 15 *Ib.*, 457; 17 *Ib.*, 545; Broom's Legal Maxims, 542, 545, 555, 556, 557, 558, 559, 560, 595, 619; Code, §2757; 36 *Ga.*, 454.

JACKSON, Chief Justice.

The following deed was executed by Mrs. Ann Elon:

"STATE OF GEORGIA—Chatham County.

"This Indenture made at Savannah, state of Georgia, county of Chatham, between Mrs. Ann Elon, of the said city of Savannah, county and state aforesaid, of the one part, and Mrs. Ann Pickett, daughter of the said Ann Elon, of the other part, witnesseth that the said Ann Elon, as well for the natural love and affection, and in consideration of the said natural love and affection which she, the said Ann Elon, hath and beareth unto the said Ann Pickett, as also for the better maintenance, support and livelihood of her, the said Ann Pickett, hath

given, granted, aliened and confirmed, and by these presents doth give, grant, alien and confirm, unto the said Ann Pickett and her three children (lawfully begotten), viz: Ann Brown, and by marriage, Ann Crane, Mary Pickett and Charles S. Pickett, being the lawful heirs of the said Ann Pickett, all those four negro slaves, viz: Mary, a negro woman, slave, and her three children, viz: Robert, a mulatto man, Adam, a black man, and Catharine, a black girl; also, I do hereby give, grant, enfeoff and confirm, and by these presents do give, grant, alien, enfeoff and confirm, unto the said Ann Pickett and her three children aforesaid, all those two lots of land in the city of Savannah, lying and being in the upper part of Oglethorpe ward, formerly the village of St. Gall, containing——feet in length and——feet in depth, said lots known and designated in the plan of said city by the letters, to-wit: one lot by the letter (J), on which there is a story-and-a-half house now standing in which the said Ann Pickett now lives, occupies and resides in, and, also, the lot adjoining, known and designated in the plan of said city by the lot letter (L) on which there is a house now standing. To have and to hold the aforesaid four negro slaves and the future issue and increase of the female slaves, and to have and to hold the aforesaid two lots of land before described, to them and their lawful heirs, executors, administrators and assigns as hereinafter mentioned, laid down and described and set forth, and subject to the following conditions, restrictions and reservations that is to say, as follows: that the aforesaid four negro slaves named in the Indenture, as well as the two lots of land described above, are to be and shall remain in the full use, occupation and custody of my daughter, Ann Pickett, for and during her natural lifetime, for her own sole and proper use and benefit—nevertheless, by no means whatsoever, to be subject or subjected to the use, uses, control or disposition of her husband or husbands.

"And it is expressly understood, meant, intended and determined, that the said husband or husbands of the said Ann Pickett, are not nor shall not, make, use or control any part or parcel of the aforesaid four negroes and two lots, nor shall he receive any part of the benefit or benefits arising therefrom in any way whatsoever, but to remain immediately under the control of the said Ann Pickett during her natural lifetime, and it is also expressly understood that at her death the said property, and the whole of it, shall remain undivided, and to be placed in the hands and possession of such trustees, executors or administrators as she, the said Ann Pickett, may make, constitute and appoint, until such time as the youngest child of the said Ann Pickett shall come of lawful age, to-wit: Charles S. Pickett, and then, and not till then, shall the said property, to-wit: the four negroes and the two lots, be equally divided between the aforesaid three children, Mary

Pickett, Charles S. Pickett and Ann Crane, and should either die before they should arrive to lawful age, leaving no lawful issue of their bodies, then shall the survivor or survivors be entitled to and receive such portion as the deceased would have been entitled to—and it is also expressly understood that neither of the husbands of the female heirs shall have any control, use or disposition of such portion of the aforesaid property that they or either of them shall or may receive, nor shall it be subject or subjected to him or them, or any control, or debts that he or they may make in any way whatsoever.

"And lastly, it is expressly understood, meant, declared and intended, that should all of the aforesaid children, to-wit: Ann Pickett (Ann Crane), Mary Pickett and Charles S. Pickett, die, leaving no lawful issue, then and in that case, all the aforesaid property so given and granted shall revert and go back to my surviving children, that is to say, the surviving children of Ann Elon, to be equally divided among them and their heirs, share and share alike.

"In witness whereof I, the said Ann Elon, have hereto set my hand and seal, at Savannah, this twelfth day of August in the year of our Lord eighteen hundred and twenty.

"(Signed)                              ANN ELON."  [L. S.]

"Signed, sealed and delivered in presence of
                "(Signed)   WM. MILLER,
                "(Signed)   WM. C. BARTON, J. P."

Mrs. Ann Elon died in 1820, leaving four children, of whom Mrs. Doty was one, and Mrs. Ann Pickett, the grantee under the foregoing deed, another. Ejectment was brought under the statutory form for the land described in the deed by the son and sole heir of Mrs. Doty against Mrs. Charles S. Pickett, who held under her husband, Charles S., named as a co-grantee in the deed. The son and heir of Mrs. Doty, sued as remainderman under the deed, the three children of Mrs. Ann Pickett having died, leaving no issue at the time of their respective deaths; and the defendant claimed under the deed of her husband to Hiram Roberts, as trustee for her and her children. Those children died in infancy, and thus she became sole beneficiary under the deed. Pending the suit, Doty, the plaintiff, and Mrs. Charles S. Pickett, the defendant, both died, and the action proceeded in the names of their res-

v 66—10

pective administrators.    When Charles S. Pickett became
of age there was no division of the lands under the deed
of Mrs. Elon, but the other children were dead, or he had
bought their interest in the estate.    He came to his ma
jority in 1834, and executed the deed to Roberts in trust
for his wife in 1848 ; and surviving one of his sisters who
died leaving no issue, died himself without issue, in 1857
—the other sister died in 1862, also without issue—Mrs.
Ann Pickett herself died in 1845, leaving Charles S. and
one daughter surviving her.    So that the question is, did
Charles S. Pickett take under this deed a vested remainder
in fee when he attained his majority? and when he bought
the interest of his sister, and survived his mother, was the
whole estate his?    If this be so, he conveyed it to Roberts
in trust for his wife, and her administrator will hold the
land ; if the remainder did not then vest in him, but he
took only an estate for life, unless he left issue, with con-
tingent remainder over to the other offspring of Ann
Elon, then the plaintiff is entitled to recover as such con-
tingent remainderman.    Leaving out the last clause of
the deed, which is the only clause in it which makes any
mention of or allusion to the other children of Ann Elon,
the grantor, it would be beyond cavil that he took the
absolute title ; and it is conceded by the plaintiff in error
to be so.    Does that clause alter it ?    We think not, for
by its very words, if Ann Pickett, Ann Crane, Mary Pick-
ett or Charles S. Pickett left lawful issue, there was to be
no reversion and remainder over to Ann Elon's other
children, and at the death of Ann Pickett, which was
in 1845, she had issue living, to-wit : Charles S. and Ann
Crane.

But independently of this construction of the plain
language of the last clauses of the deed, we think that
the last clause has reference to the time when Charles S.
attained his majority, and when the estate was to be di-
vided.    It was put in the hands of trustees until that
time ; Ann Pickett was to hold it in trust until that time,

if she lived so long, and in the event of her death, then it was to be held by such trustees or executors or administrators as she might leave. She was to enjoy the whole of it during her life, and for that use she held the title, but at her death, to preserve the estate until the time for division, her executors, etc., were to hold the title, that is, keep the estate together until Charles S. attained majority, then it was to be divided, the use for life being in the mother still to all of it, but the remainder then to vest in the survivors of the three children. But if they were all *then* dead, the remainder was to vest in the surviving children of Ann Elon, the grantor.

In other words, whilst it cannot be denied that there is confusion in the words, and doubt about the true construction of this deed, we hold that the grantor conveyed a life estate to Ann Pickett with remainder to those of her three children named in the deed who should be in life when Charles S. attained his majority, and if none then should be in life, then over to the other children of the grantor, share and share alike; that the estate in remainder vested in Ann Crane and Charles S., who were alive when the time for division came; and when Charles S. bought the interest of his sister, Ann Crane, the entire remainder became his, and his deed to Roberts, in trust for his wife, passed it to her. So, the ruling of the court below is right, and the judgment is affirmed.

Judgment affirmed.