BAILEY *et al. vs.* ROSS, administrator, *et al.*

1. By the second item of a testator's will he bequeathed his property of every kind to his wife and children share and share alike, providing that the portion which fell to his daughter should vest in her for her sole and separate use, and that the share of his wife should vest in her for life with remainder to his children. By the third item, testator provided that his estate should be kept together during the life or widowhood of his wife, or until some one or more of his children should marry, and upon the death of the wife, the property should be equally divided between his four children, or the representatives of such as might be dead; that if his wife should marry, she should draw her portion of the estate to be used by her for life, with remainder to the children; that if a child should marry, he should draw his portion out of the estate, and the balance be kept together as before; that when his daughter should marry, her portion should vest in trustees for her separate use; and that "in the event any of my (testator's) children should die without issue living, or if leaving issue such issue should die under twenty-one years of age, then the portion of such child or children shall be equally divided among my surviving children:"

*Held*, That the limitation over related to the period before the shares should be distributed and go into the possession of the children. A child who survived the wife, and received his distributive share, took it absolutely and not encumbered by any limitation over.

2. Under such a will as that above stated, the widow chose to take dower; the general legatees desiring a division before the death of the widow, agreed that the executors should sell the property and pass good titles to the purchasers thereof, and the proceeds should

stand in the place of the land for distribution ; this was done, and the legatees receipted in full to the managing executor for their shares and released him from all further claims :

*Held*, That the shares received under such agreed division vested absolutely, and without limitation over upon dying without issue.

Wills.   Estates.   Contracts.   Legacies.   Before Judge SIMMONS.   Bibb County.   At Chambers.   February 12th, 1881.

Reported in the decision.

LYON & GRESHAM; HALL & SON, for plaintiff in error.

WHITTLE & WHITTLE; HILL & HARRIS; ISAAC HARDEMAN, for defendants.

SPEER, Justice.

This cause arises on the construction of the will of John Bailey, deceased, late of Bibb county, who departed this life in July, 1854, leaving his widow, Mary Bailey, and his sons, Henry M., Robert N., and James B. Bailey, and his daughter, Eliza A. E., who subsequently intermarried with William G. Harris; and his three grandchildren, Lavoiser L., John W., and Mary A. Johnson, now Mary A. Humphries, who were the children of the testator's deceased daughter, Caroline, who married William B. Johnson, as his heirs at law and legatees under said will.. The will was duly executed on the tenth day of February 1853. The bill alleges that testator died in possession of a considerable estate, consisting of lands, negroes, stock, etc. The land embraced a large tract near the city of Macon, a portion of which is the subject of controversy in this litigation.

The following is a copy of the will, which was duly proved and admitted to record:

" In the name of God.   Amen.

I, John Bailey, of the State of Georgia, and county of Bibb, being of sound and disposing mind and memory, do make this my last will and testament, hereby revoking all former wills made by me.

·*Item* 1. I will and direct that all my just debts be paid by my executors from the proceeds of my mills and plantation, and from the money due me as soon as practicable after my death.

*Item* 2. I give, bequeath and devise all my property, money and effects of every kind and description to my beloved wife, Polly, and to my beloved children, Henry M. Bailey, James B. Bailey, Robert N. Bailey and Eliza A. E. Bailey, forever, share and share alike. And it is my express will and desire that the portion of my estate that falls to my daughter, Eliza, shall vest in her for her sole and separate use, free from the control or contracts of any future husband she may have; and it is further my will and desire that the interest or share of my wife in my estate shall vest in her during her natural life, and at her death equally divided among my four children, the share of my daughter to vest in her for her sole use as aforesaid.

*Item*. 3. It is my will and desire that all my property, real and personal, be kept together under the control and management of my said wife, during her life or widowhood, or until some one or more of my children be married, and upon the death of my wife it is my will and desire that my property be equally divided between my four children or the representatives of such as may be dead, except the children of my daughter Caroline, and in the event my wife should marry, then she is to draw her portion out of my estate, it being one-fifth part, and to have the use of the same during her natural life, and at her death to be equally divided between my children. And in the event any of my children should marry during the life of my said wife, then such children are to draw his or their portion of my estate out of the common stock, and the remainder to remain together as hereinbefore provided; and when my daughter marries, her portion is to vest in trustees, to be appointed by the superior court of Bibb county, to be held by such trustees for her sole and separate use. And in the event any of my children should die without issue, living, or if leaving issue, such issue should die under twenty-one years of age, then the portion of such child or children shall be equally divided among my surviving children.

*Item* 4. It is my will and desire that my three grandchildren, Lavoisier Johnson, Mary O. Johnson and John W. Johnson, the children of my deceased daughter, Caroline, have each a good bed and bed furniture, to be delivered to them by my executors on their marrying or coming of age. And it is further my will, that my said grandchildren have my negro woman, Nicey, and her present and future increase forever, share and share alike, and that said negroes be kept together and used and managed for the benefit of my said grandchildren till one of them marries or becomes of age, and then that

the said negroes be equally divided between them. But it is my express will and desire that the share or portion that goes to my granddaughter, Mary, go to her for her sole and separate use, free from the control or contracts of any future husband she may have.

*Item* 5. It is my further will and desire, that when it becomes necessary to divide or set apart any share or portion of my estate, that it be done by two responsible freeholders to be selected by my executors, or a majority of them for that purpose. And it is further my will and desire, that my executors or a majority of them may, at any and all times, sell or otherwise dispose of any of my personal property that may become useless, or that may not be needed in the care and management of my estate, and the proceeds thereof vested in other property, or used by my executors, as they may deem best for the interest of my estate.

*Item* 6. It is my will and desire that my son-in-law, William B. Johnson take no share or interest in my estate, and that his children take no other share or interest in my estate than hereinbefore specified.

*Item* 7. I hereby ordain, constitute and appoint my beloved wife, Polly Bailey, Henry M. Bailey, James B. Bailey, Robert N. Bailey and Robert Collins, executrix and executors of this my last will and testament.

In witness whereof, I, John Bailey, the testator, have to this my will and testament, set my hand and seal, this the sixteenth day of February, in the year of our Lord, eighteen hundred and fifty-three.

(*Signed*) JOHN BAILEY, [L.S.]

Signed, sealed and published by the said John Bailey as his last will and testament, in the presence of us, who have subscribed the same in the presence of each other, and in the presence of the said testator.

(*Signed*)          WM. L. JOHNSON,
WILLSON C. HARDY,
CARLETON B. COLE."

After the testator's death and probate of the will, his widow, instead of accepting the devise therein contained as to the lands, elected to take dower, which was assigned to her, and after the assignment, all the legatees who were the general distributees under the will, came together and agreed in writing (in lieu of an order of the ordinary) to sell the land, and under this agreement the land was sold by the executors, and at that sale, the land was bid off by various parties, whose names appear below. The following is a copy of the order:

"GEORGIA—Bibb County :

We and each of the heirs at law and devisees under the last will and testament of John Bailey, and all of us being of full age and desiring a division of the property, real and personal, of said deceased, and to effect a division a sale is necessary.

Now, we and each of us consent and desire that the executors or a majority of them do sell all the real estate lying in Bibb county, belonging to said deceased, on the first Tuesday in November next, after thirty days' advertisement.   This is to stand in lieu of the authority to sell, to be granted by the ordinary, and such sale, when made, to vest a good title in the purchaser.   The proceeds of said sale to stand in place of the land for distribution among us and for payment of debts.   Witness our hands and seals, August, 1857.

Witness the signing of                    W. G. HARRIS,
  Harris and wife.                        W. G. HARRIS,
  ISAAC C. WELSH,              ·          *Trustee for Eliza A. Harris,*
  R. M. DOUGLASS, J. I. C.                H. M. BAILEY, Ex'r.,
                                          MARY BAILEY,
                                  ·       ROBERT N. BAILEY,
  A. M. LOCKETT,                          JAMES B. BAILEY,
· W. Y. HOWARD, J. P.,         ·          ELIZA E. A. HARRIS.

The negroes of the estate of John Bailey were shown, by return to ordinary's court, to each legatee on final distribution, $3,554.14.

We, and each of us, the undersigned, acknowledge that we and each of us, have received of Henry M. Bailey, one of the executors of John Bailey, deceased, the share of negroes severally set off to us, also, we have this day received of him three thousand five hundred and fifty-four dollars, being in full for all sales of real and personal estate, and debts due the estate, and release him in full from all claims suits or demands whatever, and pray that the ordinary grant to him letters dismissory, and we, each of us, release him in full.

Witness our hands and seals, March 22, 1858.

WM. G. HARRIS,
*Trustee for Eliza A. E. Harris and children.*
JAMES B. BAILEY,
ROBERT N. BAILEY,

Test :—JOHN R. HILL,
  THOMAS P. STUBBS, *Notary Public.*

PURCHASERS OF LANDS.

| | | |
|---|---|---:|
| No. 149, sold to H. G. Lamar, . . . . . . . . . . . | $2,100 | 00 |
| 118, sold to R. B. Barfield, . . . . . . . . . . . . | 725 | 00 |

No. 79, sold to Ambrose Chapman, . . . . . . . . $1,100 00

117, sold to John Hollingsworth, . . . . . . . . . 1,150 00

110, sold to W. T. Hollingsworth, . . . . . . . . 1,100 00

148, sold to W. F. Harris, , . . . . . . . . . . . 900 00

111, sold to R. B. Barfield . . . . . . . . . . . . 400 00

151, sold to John Hollingsworth, . . . . . . . . . 1,400 00

186, sold to C. S. Holt, . . . . . . . . . . . . 530 00

68, sold to R. B. Barfield, fraction, . . . . . . . . 61 00

69, sold to R. B. Barfield, fraction, . . . . . . . . 31 00

27, sold to R. B. Barfield, fraction, . . . . . . . . 400 00

150, sold to R. B. Barfield, fraction, . . . . . . . 350 00

22, sold to L. R. Johnson, . . . . . . . . . . . 525 62

157, sold 10 acres of 149, in all 516¼ acres, being remnant and remainder after life estate of widow, sold

to Wm. G. Harris, . . . . . . . . . . . 5,000 00

Timber on 149 to N. Hammond, . . . . . . . . . . 51 00

Timber on Moor lot to H. Keniber, . . . . . . . . . 5 00

$16,028 62

It is further charged that lot 150 was bid off by W. T. Hollingsworth, and lot 151 by John Hollingsworth. The executors made their deeds to these two lots to W. T. Hollingsworth. On the back of that deed, Hollingsworth relinquished lot 151 and 147 acres of lot 150 to James B. Bailey. No money was paid for either conveyance, and James B. Bailey receipted for the price at which this land was bid off at said sale, for so much of his distributive interest in said lands under the will, and took possession of said land and held it until his death. The land assigned as the widow's dower consisted of about five hundred and sixteen and one-fourth acres, the remainder in which after the termination of the dower was sold at said sale, and under the same agreement, for the nominal sum of five thousand dollars. This bid was for the benefit of all four of the children named in the will, and a deed was made by the executors to Harris and on the back he relinquished to the other three their respective interests under that bid. The lands bid off at the sale by R. B. Barfield and H. G. Lamar were also conveyed to W. T,

Hollingsworth by the executors, and on the back of that deed the said W. T. Hollingsworth relinquished said said land, that part of 150 not conveyed to James B. Bailey to Henry M. Bailey, which he now holds.

Robert N. Bailey got no land under this sale, but took his share in money, which was paid out of the proceeds of lands bought by third persons at said sales. He died in the year 1861, leaving surviving him two sons, John T. and Edgar C. Bailey. His administrator sold his interest in the dower land at administrator's sale, and it was bought by Wm. G. Harris for his wife and the two surviving brothers, Henry M. and James B. Bailey. Mrs. Mary Bailey, the widow, died in May, 1873, and the dower lands were divided between the two brothers and Mrs. Harris, each taking possession of their respective shares under said division, and James B. Bailey continued in the possession of said land, as well as that which he received at the sale above mentioned, until April, 1880, when he died, unmarried and without children. Albert B. Ross became the administrator upon his estate, and he and the Johnson children and the children of Robert N. Bailey claim that the land thus possessed by James B. Bailey belonged to his estate, while Henry M. Bailey and Mrs. Harris, the complainants in the bill, and only surviving children of the testator, claim that the whole of it, except the interest which he purchased at Robert N. Bailey's sale, belongs to the estate of John Bailey, deceased, and is to be distributed to them according to the last clause of the third item of testator's will, as the surviving children, to the exclusion of the Johnson grandchildren as well as the said sons of Robert N. Bailey, deceased.

The plaintiffs, Henry M. Bailey and Mrs. Harris have therefore filed this their bill for an injunction and receiver against, Ross as the administrator of James B. Bailey, and John T. and Edgar C. Bailey, sons of Robert N. Bailey, and the Johnson children, setting forth the fore-

going facts, claiming that under the will of John Bailey, that inasmuch as James B. Bailey died unmarried and without issue, the said lands that it was alleged he received at the sale of the John Bailey property passed to them as the surviving children of John Bailey, under the last clause of the third item of John Bailey's will, and do not belong to the estate of said James B. Bailey to be administered by his administrator for the benefit of his creditors and heirs at law, but is the property of complainants. They sought an injunction against the administrator's rent ing or taking possession of said lands, but ask that a receiver may be appointed to take charge of the same, and hold and rent the same until the title thus disputed may be settled and determined by a decree of the court, so as to remove all cloud from their title. There are other grounds of equity set forth in complainants' bill not necessary for a proper adjudication of the main question at issue, and which are therefore omitted to be stated.

The defendants to said bill filed their answers to the same, claiming that under the will of John Bailey, James B. Bailey, the intestate, on the division of said estate under the will of John Bailey, took an absolute fee in said property, and as such the same passed to his estate on his death for the benefit of his creditors and his heirs at law.

They further insist that by solemn agreement in writing, signed by all the legatees at interest under the will of John Bailey, including complainants, that the lands of John Bailey were sold at public outcry, and that the title by agreement vested in the purchasers at said sale; that said James B. Bailey held under a purchaser who bought in good faith at said sale, by authority of said agreement, and that even if the construction of said will of John Bailey is the legal and proper construction thereof, as set forth in said bill, that complainants are estopped and barred by reason of their said agreement in writing

from setting up their claim under said will to said lands in controversy. They further set up by way of defense that the claim of said complainants is barred by lapse of time and the statute of limitations.

On hearing the bill, answers and proofs submitted, the judge below, before whom said trial was had seeking for an injunction and the appointment of a receiver, held and adjudged, "That the intestate, James B. Bailey, took an absolute interest or title to the property in dispute, under the will of John Bailey, the agreement and sale and facts in evidence on the hearing, and that the said property passed to his heirs at law, and not to the surviving brothers and sisters."

To this judgment complainants excepted, and the case is before us for review.

The decision of the questions made by this record involves not only the construction of the will of testator, but also the effect and force, as against complainants, of the written agreement entered into by the legatees under said will, providing for a sale of the property in controversy—"by which a good title to the property sold was to vest in the purchaser," and to which agreement complainants were parties. In examining the will it will be seen that the question involved only makes it necessary to determine the effect of the second and third items of that paper. It will be well, therefore, to group these two items in juxtaposition, for greater facility of construction.

By the second item the testator devises and bequeathes all of his property of every kind and character to his wife, Polly, and children, Henry M., James B., Robert N., Eliza A. E., forever, share and share alike—providing that the portion that falls to Eliza, shall *vest in her* for her sole and separate use, etc.; that the interest and share of the wife shall vest in her during her natural life, and at her death be equally divided among his four children.

The third item of the will provides for his estate to be kept together during the life or widowhood of his wife,

or until some one or more of his children marries; and upon the death of the wife, his will and desire is that his property be equally divided between his four children, or the representatives of such as may be dead ; in the event his wife marries, she is to draw her portion (one-fifth) out of his estate, to be used by her for life, and at her death equally divided between his children. If a child marries, then such one is to draw his or their portion out of his estate, and remainder to remain together as before. When his daughter marries, her portion is to *vest* in trustees to be appointed by the superior court, to be held for her sole and separate use. "And in the event any of my children should die without issue living, or if leaving issue, such issue should die under twenty-one years of age, then the portion of such child or children shall be equally divided among my surviving children."

James B. Bailey, one of the children mentioned, received a portion of the real estate devised by his father, the testator, under a sale had by the agreement of all the legatees as hereinbefore set forth, and never having married, and after surviving his mother, the life tenant, died intestate in the month of April, 1880, in possession of said lands. The question presented is, whether in the legal construction of said will on his death, under the circumstances stated, the limitation over as mentioned in the last clause of the third item took effect in favor of these complainants—his surviving brothers and sister—or whether on the general distribution the intestate took an absolute estate, and hence the same descended on his death to his heirs at law. In other words, did the testator intend by his will that on the dying of any one of these children without issue surviving to twenty-one years of age, at any time, that the limitation over should take effect in the surviving brother and sister.

It is the duty of courts to seek diligently for and be guided to a result by what was the testamentary intention of the testator, and in so seeking we are not confined

v 66—20

alone to the particular form of the devise under consideration, but to all its provisions and the context that may furnish light to guide to a correct conclusion.

There is another rule recognized both in England and this country—that the courts are ever averse to that construction which postpones indefinitely the absolute vesting of estates. Lord Brougham, in Home *vs.* Pillans, 8th Con. English Chancery, 434, spoke of the inconvenience of holding the absolute vesting to be suspended during the life of the legatees, and remarked, "this construction would never be adopted only from necessity." Such a construction would be contrary to the genius and spirit of our laws and of that general policy which looks to the unfettered transmission and alienation of all property.

Mr. Jarman, in discussing this question as to what period words referring to death, coupled with a contingency, relate, says : "When the two concurrent or alternative gifts are preceded by a life estate or other partial interest, or the enjoyment under them is otherwise postponed, the reasonable and legitimate construction would be to apply the words in question to the event of death occurring before the period of possession." In constructing the latter clause of the third item of this will, there is a precedent estate for life in the wife or widow, and the postponement of the enjoyment by these legatees is until they marry, or the life tenant dies, then, according to the above rule, the words in this clause must be referred to the death of the life tenant. The result of such a construction to the clause of this will under interpretation, would be that each of the children mentioned as legatees under this clause, surviving the widow, would, upon distribution, take an absolute fee in such distributive share. That the distribution took place by agreement of all parties, before the death of the life tenant, provided the distributee survived the life tenant, would not affect the estate thus vesting.

In the case of *Bartlett vs. Bartlett*, supplement to 33

*Ga.*, 173, in interpreting the will of the testator, the third item of that will, is strikingly like the present one. The testator bequeathed certain property to his wife during her life or widowhood, and directed that upon her death or marriage the property should be equally divided, share and share alike, between his five sons, who are specifically named, and if either of said sons should die without leaving issue at the time of his death, or born within nine months thereafter, then his share or remainder is to be equally divided among the survivors, share and share alike. The court held that the son surviving his mother, who in his life time received his share upon a division of the property, had an absolute estate in the share received by him, and the same descended to his heirs at law, and did not go over to his surviving brothers and sisters."

In both of these wills a division of the estate was to be had on the death or marriage of the life tenant. In the will of Bartlett the limitation over was contin. gent upon the son leaving issue at his death or within nine months thereafter. In this will the limitation over was contingent upon the son dying without leaving issue, or leaving issue that did not attain the age of twenty-one years. We are satisfied, then, from the authority of the case of *Bartlett vs. Bartlett*, that James B. Bailey, the intestate, having received his portion of said estate under the will of his father, and having received it surviving, as he did, the life tenant, took an absolute fee in this property, and that on his death without issue that the same descended to his heirs, and that the limitation over did not take effect.

See 33 *Ga.*, 172; *Ib.*, 77; 2 Jarman on Wills, 693; Home *vs.* Pillans, 2 Myl. and Keen, 15, in 8 Con. Eng. Ch., 434; 2 Redfield Wills, 218; Hawkins on Wills, 254, 256; 25 Beav., 82; 15 *Ib.*, 357; Cripps *vs.* Walcott, 4 Mad., 11.

We think further that this view is favored by the context of the will. The word "portion" refers to an undivided

estate, not to an estate that, after the death of the life-
tenant, has passed to the legatee and been for years in his
possession.   So, in speaking of his daughter's portion, it is
to vest in her for her sole and separate use, and on her mar-
riage it is to vest in trustees for her, etc., clearly indicating
a devise absolute and unconditional to her, and there is
not the slightest evidence that he intended to confer on
her a larger estate than on his sons.   The connection in
which these words occur also lends force to this view.
They are in the item providing for the division and the
nature of the bequest, personal and real—the objects
of the bounty, and their relations, all support this inter-
pretation, and this construction, as before remarked, is
the favorite of the courts and in accord with the spirit and
policy of the age.   41 *Ga.,* 554; 3 Kelly, 562; 2 Redfield
on Wills, 218; 4 Holst. (N. J.) 7, 8; 7 House of Lords,
Cases, 83; 5 Dana, 432.

We might well add in further support of this rule of
construction that its application has been recognized and
applied in two cases at the September term, 1880, of this
court, one of *Doty vs. Wray, administrator,* and the other
of *Taylor, executor, vs. Meador.*

2. But even if this interpretation were in doubt, or
contrary to the testamentary scheme, and if, according to
the cause of complainants as stated, and their theory of the
construction of this will so ably presented by their coun-
sel, this limitation over to the surviving brothers or
sister was to take effect at any time, whether before or
after distribution, whenever one of these children died
without issue surviving to twenty-one years of age, the
next question is, what would be the effect upon this lim-
itation over of this written agreement, signed by these
complainants and the other legatees, providing for a sale
of these lands for division, and assuring that a good
title should pass?   Is it not true that this contingent re-
mainder in these surviving children was forever shut off
and concluded by the agreement of August, 1857, and

sale thereunder? The parties were competent to contract, and within themselves, under this will (after the life estate) owned the entire fee, contingent and all. They could distribute in their own way and at their own time, and how now can they avoid an agreement under which they have enjoyed a benefit for so many years? Code, §§ 2740–2744; 55 *Ga.*, 359; *Ib.*, 449–51.

But it is said the proceeds of said sale were (under the agreement) to stand in place of the land for distribution. These proceeds were divided and a receipt in full given, and a release from all liability passed to the managing executor, and all were discharged from the administration. A release of one is a release of all ; 60 *Ga.*, 70. These devisees or remaindermen consented in writing to the sale and distribution, and assured to the purchaser a good title. If they did this in hostility to this limitation over, under which they now claim, then they must abide it. They cannot claim against the will in 1857 and under the will in 1880. They destroyed their contingent estate, if they had one, when they consented to this sale and that a good title shall vest in the purchaser. 20 *Ga.*, 791 ; 56 *Ib.*, 126 ; 14 *Ib.*, 235.

In either view, then, we can take of this cause, we do not find any error in the judgment below refusing this injunction and declining the apppointment of a receiver.

Let the judgment below be affirmed.