CLANTON *et al. vs.* ESTES *et al.*

1. By the 9th item of his will, a testator gave a money legacy to his two sons in trust for them for life, and at their death for such child or children as they might leave living. By the 21st item, it was provided that, when the youngest child became of age or married, the rest, residue and remainder of the estate of every description should be equally divided among all the testator's children and the children of any one of the latter who might depart this life before the period specified, such of the grandchildren to receive only the deceased parent's share; and it was further directed that, if it should be to the interest of the estate, or those who succeeded to it, that any real estate then in the possession of the executors should be sold for the purpose of this division, this was to be done, and the remaining property was, by three persons selected by the executors and other parties in interest, to be classified in lots and portions and, with the cash fund realized or received, to be fairly and equally divided, set off and delivered to each of testator's legatees or distributees, that is to say, to his children and sons-in-law or grandchildren, as the case might be, according to the above instructions. The negroes were to be divided without sale and kept

Clanton *et al.* *vs.* Estes *et al.*

together in families as much as possible. By a codicil, dated July 11, 1863, the testator bequeathed to his wife the use and occupation of his residence, with the furniture, etc., and after her death, the property was to be equally divided among the several legatees, who were to receive the residue of the testator's estate, as provided and directed in the 21st item of the will. By a codicil, dated April 6, 1864, after making provision for his minor children by setting apart to each of them the sum of $25,000, to put them upon the footing of the other children, to whom advancements had been made, the testator devised to his wife, in addition to what he had already bequeathed her, a warehouse, to be enjoyed by her for life, and at her death, to be equally divided among all his children then living and the children of any one or more of them who might have previously died, the latter to take *per stirpe* and not *per capita*. The two sons survived the testator. One of them died April 12, 1872. The other filed his petition in bankruptcy August 28, 1878, and was discharged February 14, 1879, his interest under the will of his father not being returned in his schedule. The testator's wife died in May, 1884:

*Held*, that the two sons took a vested remainder interest in the property which was bequeathed to the testator's wife for life, and this remainder vested upon the death of the testator.

(*a.*) In all cases of doubt, the law favors the vesting of remainders, and in construing wills, where there are words of survivorship, these are made to refer to the death of the testator in order to vest the remainder.

(*b.*) Where certain judgments were obtained against the testator's son prior to his bankruptcy, and were not proved in the bankrupt court, their lien attached to the property bequeathed to him, and all of the conditions of the will having been fulfilled, and he having taken an absolute indefeasible title in fee to the remainder beqeathed to him, it was subject to levy and sale.

(*c.*) The lien of plaintiff's judgments having been preserved, notwithstanding the discharge in bankruptcy, they could be satisfied out of the property.

2. Prior to October 15, 1885, the entries on these executions were sufficient to keep the judgments alive, and the act of that date, requiring the entries to be recorded on the execution docket, does not apply to judgments obtained before its passage.

January 18, 1887.

Wills. Estates. Judgments. Remainders. Bankruptcy. Liens. Executions. Laws. Statute of Limitations. Before Judge Roney. Richmond Superior Court. October Adjourned Term, 1885.

On January 14, 1885, Charles Estes filed his bill to subject the interest of James L. Clanton in the property formerly owned by Turner Clanton, deceased, under whose will it was alleged that James L. Clanton took an interest. The testator died in 1864, leaving a will and several codicils thereto. The original will was dated March 16, 861, and contained the following items material to this case:

"To each of my sons, James M. Clanton and Holt Clanton, I give and bequeath the sum of forty-five thousand dollars; forty thousand thereof to be received, held and taken by my executors when the whole is directed to be paid, which time will be hereafter specified, upon trust and subject to the terms, limitations and provisions hereinafter specified, that is to say, upon trust for and during the natural lives of my said sons respectively, and after the death of either of them, upon trust for such child or children as he may leave living, the child or children of either of my said sons who may die before my said son to receive the deceased parent's share. It is my desire that my said sons should be allowed to have the full possession and control of said property, not wasting the body thereof, during their lives; and if I should name my said sons or either of them among the executors of this my will, my intention and desire is that the other executors named shall constitute the trustees by this clause appointed.

"When the youngest of my children above named or hereafter born shall arrive at legal age or marry (or in the event of the youngest dying before coming of age or marrying, when the next youngest shall arrive at age or marry), it is my will and intention, and I so desire and direct, that the rest and residue of my estate of every description shall be equally divided among all my children and the children of any one of the latter who, before the period specified, may depart this life, such of my grandchildren to receive only the deceased parent's share. And I further direct that if it be to the interest of my estate, or of those who succeed to it, that any of the real estate then in possession of my executors shall be sold for the purposes of this division, this shall be done and the remaining property shall be, by three experienced persons to be selected by my executors and the other parties in interest, classified into lots or portions, and, with the cash funds received or realized, fairly and equally divided, set over and delivered to each of the legatees or distributees of my estate, that is to say, my children and sons-in-law (or grandchildren, as the case may be) according to the above instructions; the negroes to be divided without sale, and to be kept together in families as much as possible."

On July 11, 1863, the testator executed a codicil to his will, containing the following item:

"It is my will and desire that my wife, Mrs. Mary Clanton, shall have the use and occupation of my house and lot and their appurtenances, on which we reside, and situated on the corner of Greene and Centre streets, in the city of Augusta, together with the use and enjoyment of all the plate, china and crockery ware, household and kitchen furniture of every description, of which I may die possessed, at either of my dwelling-houses, for and during the term of her natural life, and that, after her death, the said property shall be equally divided among the several legatees who are to receive the residue of my property, as provided and directed in the twenty-first clause of the will to which this is a codicil."

On April 6, 1864, he executed a codicil, containing the following item:

"To my wife, Mary Clanton, in addition to what I have already bequeathed and devised to her, I do hereby give, devise and bequeath the warehouse and lot on Reynolds street, in the city of Augusta, now occupied by James M. Dye, to be enjoyed by her for life, and at her death to be equally divided among all my children then living, and the children of any one or more of my children who may previously die, the latter to take *per stirpes* and not *per capita.* I also bequeath to my wife my carriage and match of horses."

The claim of Estes was in the form of an execution, dated July 14, 1869, issued on a judgment rendered June 16, 1869, in favor of Estes against Thomas and Schaub, as principals, and James L. Clanton, as security. It had upon it the following entries:

July 16, 1869. An entry of levy on property of Thomas.

November 6 and December 20, 1869. Receipts for partial payments made by Thomas.

March 26, 1870. An entry of sale of the property levied on under a mortgage *fi. fa.* Also an entry of *nulla bona* as to Thomas and Schaub.

July 6, 1870. An entry of dismissal of the above levy.

March 28, 1871. An entry of levy on certain land as the property of Clanton.

February 12, 1873. An entry of *nulla bona* as to "the defendants," by sheriff.

June 28, 1875. A receipt for certain collaterals deposited, with power of sale.

December, 1878. An entry of *nulla bona* as to all of the defendants.

December 1, 1884. An entry of no property as to all of the defendants.

The National Bank of Augusta held an execution, dated February 3, 1872, based on a judgment rendered January 2, preceding, against Thomas, maker, and Clanton, endorser, and having on it the following entries:

March 9, 1872. An entry of payment of costs by the plaintiffs.

March 23, 1872. An entry of levy (not stating on whose property).

December 4, 1872. An entry that the property was found not subject.

February 12, 1873, December 2, 1878, and December 1, 1884. Entries of *nulla bona.*

The defendant demurred to the bill on the following grounds:

(1.) For want of equity.

(2.) Because the bill filed by Estes alleges the date of the judgments, which shows that the claim is barred, and does not allege any fact taking the case out of the statute of limitations.

(3.) Because the judgment on which complainant's bill is based is void on its face.

The defendant also filed a special plea, alleging that more than seven years had elapsed since the rendition of the judgment; that the entries thereon were not transcribed by the sheriff on his docket, as required by law, in order to keep the execution alive; and that no sheriff's dockets are kept in Richmond county; also that the defendant had been adjudicated a bankrupt and duly discharged on August 28, 1878.

The complainant moved to strike the plea. The court sustained the motion, and overruled the demurrer. The defendant excepted.

HOOK & MONTGOMERY; CLAIBORNE SNEAD, for plaintiffs in error.

FRANK H. MILLER; WM. K. MILLER, for defendants.

HALL, Justice.

This was a suit at the instance of the judgment creditors of James L. Clanton, the purpose of which was to reach an interest alleged to belong to him, under the will of his father, Turner Clanton, and which interest, together with the balance of the estate of the testator, was then in the hands of a receiver, appointed by the court of equity of Richmond county. After these judgments were obtained, the defendant in execution went into bankruptcy, and was discharged from the payment of his debts by a final judgment of that court. The claims of these plaintiffs were not proved in the bankrupt court, nor did Clanton return the interest claimed for him under the will of his father in the proper schedule attached to his petition in bankruptcy. The enforcement of these claims was resisted upon the following grounds:

1st. Because Clanton's interest, if any, under the will of his father, was a contingent remainder, and the contingency upon which it was to vest had not happened when he went into bankruptcy; that he had nothing which could be bound by plaintiff's judgments prior to his adjudication and discharge in bankruptcy; and that the lien of such judgments never attached to this property, the right to which under the law was acquired subsequently to his discharge.

2d. Because the judgments sought to be enforced were dormant, it being insisted that the entries on them, though made by the proper officers, had not been recorded on the execution docket in time to relieve them from the dormant judgment act.

1. If James L. Clanton took a vested remainder in the property in controversy, then he had an interest upon

which the judgments of the plaintiffs were a lien, and the plaintiffs not having proved their claim in bankruptcy, that lien was preserved, notwithstanding Clanton's discharge, and they have a right, according to the rulings of this court, to enforce such liens against the property.

By the 9th item of his will, the testator gave a money legacy to his sons, James L. Clanton and N. Holt Clanton, in trust for such sons for life, and at their death for such child or children as they might leave living. By the codicil to his will, dated July 11th, 1863, he bequeathed to his wife, Mary M. Clanton, the use and occupation of his residence, corner of Greene and Centre streets, in the city of Augusta, with the furniture, etc., during her natural life, and after her death, the property was to be equally divided among the several legatees, who were to receive the residue of testator's estate, as provided and directed in the 21st item of the will, to which this was a codicil. This item of the will provided that when the youngest child became of age or married, the rest, residue and remainder of the estate, of every description, should be equally divided among all testator's children, and the children of any one of the latter who, before the period specified, may depart this life; such of the grandchildren to receive only the deceased parent's share; and it further directed that if it be to the interest of the estate, or those who succeeded to it, that any real estate then in the possession of the executors should be sold for the purposes of this division, this was to be done, and the remaining property was, by three persons selected by the executors and the other parties in interest, to be classified in lots and portions, and, with the cash fund realized or received, to be fairly and equally divided, set off and delivered to each of testator's lagatees or distributees; that is to say, to his children and sons-in-law or grandchildren, as the case might be, according to the above instructions, the negroes to be divided without sale and kept together in families as much as possible.

By codicil, dated April 6th, 1864, after making provision

for his minor children by setting apart to each of them the sum of twenty-five thousand dollars to put them upon the footing of the other children to whom advancements had been made, testator devised, by the 2d item thereof, to his wife, in addition to what he had already bequeathed her, a warehouse on Reynolds street, then occupied by James M. Dye, to be enjoyed by her for life, and at her death to be equally divided among all his children then living, and the children of any one or more of them who might have previously died, the latter to take *per stirpe* and not *per capita.*

N. Holt Clanton, brother of James L., died April 12th, 1872, intestate and without children. Mary M. Clanton, the life tenant, died in May, 1884. James L. Clanton's petition in bankruptcy was filed August 28th, 1878, and he was discharged February 14th, 1879.

Under these facts and the above recited provisions of the will of Turner Clanton, we are of opinion that James L. Clanton and his brother, N. Holt Clanton, each took a vested remainder in the property bequeathed to Mrs. Mary M. Clanton for life, and that this remainder vested in them when the will took effect at the death of the testator. A vested remainder, according to our code, is one limited to a certain person at a certain time, or upon the happening of a necessary event.   §2265 and citations.

It is certainly true, in all cases of doubt, that the law favors the vesting of remainders, and in construing wills, where there are words of survivorship, these are made to refer to the death of the testator in order to vest the remainder.   Code, §2269; 5 Wallace, 269; 6 Wallace, 458; *Olmstead vs. Dunn,* 72 *Ga.* 860; *Nelson vs. Nelson,* 73 *Ga.* 133.

The bequests of the remainders in this will are much like those in the case of McArthur *vs.* Scott, 113 U. S. 340, and it is precisely similar if grandchildren, instead of wife, be substituted as the life tenants. It was there held that the children of the life tenants took vested remainders,

subject to open and let in those born after testator's death, and subject to be divested as to any remainderman who died before the termination of the particular estate, leaving issue.

In discussing the question of contingency, the court, on page 381, says: "The direction that if any grandchild shall have died before the final division, leaving children, they shall take and receive *per stirpe* their share of the estate, both real and personal, which their parent would be entitled to have and receive if then living, was evidently intended, and wisely too, to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren, and its only effect upon that gift is to divest the share of any grandchild, deceased, leaving issue and to vest that share in such issue."

James L. Clanton was in life when the will was made and at the death of the testator, and was therefore capable of taking at the death of the testator. The person to take was thus made certain; the event on which he was to enter into possession was also certain, viz. the death of the life tenant. He was then in life and the contingency had happened which was to vest the remainder in him and thus cut off the ultimate remainder to his children. The precise point in issue here is determined by the following cases: *Franke vs. Berkner et al.*, 67 *Ga.* 264; *Bailey et al. vs. Ross, adm'r, et al.*, 66 *Ga.* 354; *Doty, adm'r, vs. Wray, adm'r*, 66 *Ga.* 153; *Jones vs. Crawley et al.*, 68 *Ga.* 175; *Wilbur vs. McNulty*, 75 *Ga.* 458; *Nelson vs. Nelson, ut supra; Ford et al. vs. Cook et al.*, 73 *Ga.* 215; *Mathews vs. Paradise*, 74 *Ga.* 523; *Lufburrow vs. Koch*, 75 *Ga.* 448. These cases and others cited on the exhaustive brief of counsel for defendant in error demonstrate, as we think, that James L. Clanton, who was in life when the will was made, and at the time of the death of the testator, and also at the death of the life tenant, took a vested remainder in the property in question, and all the other conditions of

the will having been fulfilled, he took an absolute inde-feasible estate in fee to the remainder bequeathed to him. This being the case, his interest was leviable to satisfy the lien of the judgments which were not proved in bankrupt-cy, as has been frequently decided by this court. See *Jeffries vs. Bartlett, ex'r,* 75 *Ga.* 230, and other cases cited in brief of counsel.

It is not necessary to determine whether this interest in remainder should have been returned to the court of bank-ruptcy as a part of the estate of James L. Clanton. The fact that it was omitted from the schedule renders it clear, as it seems to us, that the plaintiffs had a right to levy their executions on it. It was never administered in bankruptcy, and the lien of plaintiffs' judgment being preserved, not-withstanding the discharge in bankruptcy, they may be satisfied out of this property. See *Urquhart vs. Leverett,* 69 *Ga.* 92.

2. Prior to the 15th of October, 1885, the entries on these executions were sufficient to keep the judgments alive. The act of that date declares that no judgment shall be enforced after the expiration of seven years from the time of its rendition, when no execution has been issued upon it and the same placed upon the execution docket, as now provided by law, or when execution has been issued and seven years have expired from the time of the record upon the execution docket of the court from which the same issued, of the last entry upon the execution, made by an officer authorized to execute and return the same. This act, by its terms, applies to judgments obtained after its pas-sage. Acts 1884–5, p. 95. These judgments having been obtained long anterior to its passage do not fall within it.

There was one other question only mentioned in the ar-gument of this case, viz. as to the validity of these judg-ments, one party insisting that they were void, because entered up on the verdict of a jury when the actions on which they were rendered were on contracts, and no issu-able pleas under oath being filed thereto, the judgment, to

have been valid, should have been awarded by the presiding judge. The other party disputed these facts, so far as the filing of defences was concerned, and insisted that there were issuable pleas filed to the suit in accordance with the law.

It does not appear from the record or bill of exceptions that the superior court passed on any such question, and its consideration having been expressly waived in this court, and the request made by the parties that it be left open, it is not, therefore, decided, but reserved for future consideration.

Judgment affirmed.