MARTIN, trustee, *v.* CITIZENS BANK OF MARSHALL-
VILLE; *et vice versa.*

Nos. 10416, 10434. June 22, 1935.

*M. Felton Hatcher* and *R. F. Scarborough,* for plaintiff.

*C. L. Shepard,* for defendant.

BELL, Justice. In the year 1925 T. J. Martin and his sister, Miss Lula Martin, jointly obtained from the Citizens Bank of Marshallville two loans, one in the sum of $7500 and the other in the sum of $1600, executing their promissory notes therefor and securing the notes by deeds to real estate. In 1931 a third deed was executed between the same parties to correct one of the former deeds and as further security. The money borrowed from the bank was intended to be used and was used in the purchase of Florida real estate. In the fall of 1933, each debt was unpaid, and the bank sought to exercise powers of sale contained in the security deeds, and advertised the property for sale on December 26, 1933. In order to prevent the sale as thus proposed, T. J. Martin, "as trustee for Miss Lula Martin and unascertained remaindermen under the will of John Martin, deceased, and the trust estate created by said will," on December 22, 1933, filed a suit against the Citizens Bank of Marshallville, alleging that the property conveyed to the bank as security was a part of the estate of John Martin, who had died many years before, and that under the terms of his will the share of Miss Lula Martin consisted of a mere "equitable life-estate" which she could not alienate as she had undertaken to do by the security deeds; and praying for injunction, receivership, and cancellation. The petition disclosed the following facts: The will of John Martin was executed on January 3, 1882. The testator was seriously ill at the time, and knew that he could live only a few days. His death did in fact occur within the space of three days, to wit on January 7, 1882. He left surviving him his wife, Cordelia Martin, and also four children, namely, William Martin, Mary Martin, T. J. Martin, and Lula Martin. William and Mary died in 1892, unmarried and without issue, leaving T. J. Martin and Lula Martin as the only surviving children of John Martin. Lula Martin was the youngest child, and at the time of execution of the will was only

four years of age. She was thus about 14 years of age at the date of death of William and Mary Martin. Her mother died in 1918, leaving only T. J. and Lula, the latter being at this time about forty years of age. The will contained the following provisions:

"Item 3. I desire and direct that my executor shall continue to carry on my farming interest, on my plantation in Houston County, until my youngest child shall arrive at the age of twenty-one years, unless in their discretion they shall think best for my estate that said farming interest should be discontinued; and in order that my executors shall be able to carry out this item of my will with as little expense and trouble as possible, I direct that they shall have authority to employ labor, rent land, rent out my land and other property, and make any and all contracts necessary to carry on said farming business, without order or authority from any court. And my executors should at any time think best, I desire and direct that they may rent out all my lands and the property thereon or any part thereof without obtaining any order of court. And in making any contract necessary in carrying out this item of my will, my executors shall use their best discretion, and shall make said contract privately or otherwise as they think best.

"Item 4. I desire and will that my executors shall have full discretion in using and investing and managing all the money and other property of which I may die possessed, not already disposed of in this will, for the benefit of my estate. And I desire in managing the same my executors shall make any purchase or sale they may think best for the interest of my estate by private contract or otherwise as they may deem most advisable and without any order of court.

"Item 5. It is my will and desire that my executors shall use any fund belonging to my estate which they may deem necessary and proper in the education of my children and the maintenance and support of my family.

"Item 6. I desire and direct that as each of my children shall become of the age of twenty-one years, or as each of my daughters shall marry, provided they marry before they are twenty-one years old, my executors shall advance to said children such an amount of money as in their wise discretion the condition of my estate shall warrant, either as a loan or as an advancement as my said executors shall think best, but I desire to leave it to the discretion

of my executors whether they shall make said loan or advancement at all or not.

"Item 7. I desire and direct that when my youngest child arrives at the age of twenty-one years, my executors shall divide all my estate between my dear wife, Cordelia Martin and all my surviving children equally share and share alike, except that I desire the share of my daughter Mary and the share of my daughter Lula to exceed the respective shares of my wife and sons by the sums of three hundred dollars. If however, my executors should think it best for my estate to postpone the division until a reasonable time after my youngest child becomes of age twenty-one years old, I desire that they shall do so.

"Item 8. I devise and bequeath unto Thomas S. Martin in trust for the use of my daughters, Mary and Lula, their respective shares of my property when the same shall have been set apart to them in accordance with item seven of this will. I desire that said trustee shall invest the share of each of my said daughters in real estate and that he shall have power to sell the same or any part thereof and reinvest the proceeds in property in like kind and upon the same uses, by first obtaining the consent of my said daughters respectively without any order of court. And I desire that if either of my said daughters should die without issue that her said property devised as aforesaid shall be divided equally share and share alike between my surviving children and my wife, Cordelia, if she is then in life, and should they or either of them die leaving a child or children then I desire that said property shall descend to their respective children share and share alike."

Thomas S. Martin, who was named in the will as trustee, died in 1886, from which time the trust estate remained unrepresented until the appointment of T. J. Martin, the present petitioner, as trustee by the superior court of Macon county, Georgia, on December 22, 1933. The petition alleged that the estate of John Martin, deceased, has never been divided, and that the share of T. J. Martin is held in fee simple, while the share of Lula Martin is a trust estate and for life only. "That the said trust estate created for the benefit of Lula Martin and unascertained remaindermen is still executory, in that Miss Lula Martin is unmarried, has no issue, and that until her death the contingent remaindermen can not be determined. That Miss Lula Martin, as a cestui

que trust, with only an equitable life estate interest, had no authority, under the terms of said will, to borrow money for any purpose whatsoever, and give a security deed therefor against the trust estate created for her benefit and for the benefit of unascertained contingent remaindermen, which unascertained remaindermen can not be ascertained until her death. . . That as against said trust estate said security deeds are void and of no effect." Demurrers general and special were filed by the defendant bank, and at the interlocutory hearing only the petition and the demurrers were considered. The court passed the following order: "Construing pertinent items of the will of John Martin, it is ruled that as to the one-fifth interest bequeathed to Lula Martin, said will vested in the latter an equitable life estate only, and as to the remainder interest, created an executory trust for unascertained remaindermen. It is therefore ruled and ordered and adjudged, that as to a four-fifth undivided interest in said estate, upon which defendant has a security deed, and also as to the equitable life estate of Lula Martin in a one-fifth undivided interest in said estate, the injunction and restraining order heretofore granted as against defendant be and the same are hereby dissolved, vacated, and set aside, but that said restraining order and injunction are until further order of the court continued against defendant as to the attempted sale of full and complete title in fee simple of said undivided one-fifth interest in and to said property, to which it is adjudged that said Lula Martin has only an equitable life estate. This May the 21st 1934. W. M. Harper, Judge Superior Courts, S.W.C." To this judgment both parties excepted.

The bank excepted upon the ground that under the facts stated in the petition Miss Lula Martin was the owner in fee simple of a one-half undivided interest in the property, equally with her brother T. J. Martin as a tenant in common, and that since there was no remainder there could be no unascertained remaindermen. T. J. Martin, as trustee, excepted to that portion of the order holding that the equitable life estate of Miss Lula Martin amounts to only a one-fifth interest instead of a one-third interest, plus $300, this plaintiff in error contending that since two of the children died without issue before the time for division, the estate was in that event devised in equal portions to the widow, who was then still in life, and to the surviving children T. J. and Lula, and that the

share of Lula was thus a one-third interest, though limited to a life estate in trust. The trustee also excepted to that portion of the order which permitted the bank to sell the equitable life estate of Miss Lula Martin, the contention here being that such an equitable estate could not be conveyed by the cestui que trust and was therefore not subject to sale under the security deed.

"As a general rule, when there is a devise to a class the members of the class are to be ascertained upon the death of the testator, as the will takes effect on that date." *Irvin* v. *Porterfield,* 126 *Ga.* 729, 732 (55 S. E. 946). "In the absence of anything in the will to the contrary, the presumption is that the ancestor intended that his property should go where the law carries it, which is supposed to be the channel of natural descent. To interrupt or disturb this descent, or direct it in different course, should require plain words to that effect." *Fraser* v. *Dillon,* 78 *Ga.* 474 (3 S. E. 695). *Allen* v. *Durham,* 173 *Ga.* 811, 812 (161 S. E. 608). See also *Crossley* v. *Leslie,* 130 *Ga.* 782 (61 S. E. 851, 14 Ann. Cas. 703); *Green* v. *Driver,* 143 *Ga.* 134 (84 S. E. 552); *Moore* v. *Cook,* 153 *Ga.* 840 (113 S. E. 526). Under a proper construction of item 7 of the will here under consideration, the phrase "all my surviving children" as contained in that item should be held to mean such children of the testator as were living at his death. Two of the children survived the testator, and then died without issue. Whether by inheritance, or partly by inheritance and partly by item 8 of the will, the shares of these children became at their death the property of their mother Mrs. Cordelia Martin and of their brother and sister, T. J. Martin and Lula Martin. Later the two last named inherited the interest of their mother. Thus T. J. Martin and Lula Martin finally became the owners of the whole estate in fee simple, as tenants in common equally interested, unless there is provision to the contrary in item 8 of the will. "The general rule is that courts will not by construction reduce an estate once devised absolutely in fee, by limitations contained in subsequent parts of the will, unless the intention to limit the devise is clearly and unmistakably manifest." *Smith* v. *Slade,* 151 *Ga.* 176 (2) (106 S. E. 106). See *Schoen* v. *Israel,* 168 *Ga.* 779, 781 (149 S. E. 124). Where an intention to the contrary does not clearly appear, divesting clauses are to be so construed as to vest the estate indefeasibly at the earliest possible time. *Sumpter*

v. *Carter,* 115 *Ga.* 893 (42 S. E. 324); *Schley* v. *Williamson,* 153 *Ga.* 245, 256 (111 S. E. 917); *Moore* v. *Cook,* supra. Item 8 of the will of John Martin provided that if either of his daughters should die without issue, the property devised to her as aforesaid should be equally divided among his surviving children and his wife, if she is then in life; and if either of his daughters should die leaving a child or children, then the share of such daughter should descend or go to such child or children. The will does not show at what time, or relatively to what other event, the death of either daughter should take place, in order for her share to go to others designated upon such occurrence. The will is wholly silent upon this question. The will fixed a time for division, specifying in effect that the property should be kept together until the youngest child should reach majority, but that the estate should be divided at that time or within a reasonable time thereafter. It was intended by the testator that each of the devisees, if living, would then acquire possession of his or her share, and we think a proper construction of item 8 is that each of the devisees would take a fee simple estate on surviving the time fixed for a division. In *Bailey* v. *Ross,* 66 *Ga.* 354, 364, the following statement by Jarman on Wills was adopted and applied by this court: "When the two concurrent or alternative gifts are preceded by a life estate or other partial interest, or the enjoyment under them is otherwise postponed, the reasonable and legitimate construction would be to apply the words in question to the event of death occurring before the period of possession." See also *Clanton* v. *Estes,* 77 *Ga.* 352, 360 (1 S. E. 163); *Crumley* v. *Scales,* 135 *Ga.* 300 (69 S. E. 531). This statement by Jarman was again approved by this court in *Patterson* v. *Patterson,* 147 *Ga.* 44 (92 S. E. 882). The will involved in that case provided as follows: "I [Drewry S. Patterson] will that my wife, Margaret Patterson, reside on and have a lifetime interest in my homestead; . . and at her death I wish the homestead on which I now live to be the property of my daughter, Mary Jane Patterson. If the said Mary Jane Patterson should die without child or children, then the property or the proceeds of the same to be the property of my son, David W. Patterson, or, in case of his death, the property of his children." Margaret Patterson, the person designated as life-tenant, survived the testator; and Mary Jane Patterson survived the life-tenant, but

did not marry, and died childless, leaving a will disposing of the property referred to in this item of the will. This property was claimed by one deriving title from David W. Patterson and his children. It was held that "under the provisions of the item of the will above set forth, Mary Jane Patterson, having survived the life-tenant, took an absolute estate in fee simple; and the court erred in sustaining the contention of the claimant." In the earlier case of *Perdue* v. *Anderson,* 142 *Ga.* 309 (82 S. E. 884), the will under consideration provided as follows: "It is my desire that all of my property (both real and personal) be kept together until my youngest child becomes of age, and managed by my executors for the best interest of my lawful legatees (unless my wife should die or marry); in either event my estate shall be divided equally among my legatees as soon as it can conveniently be done. . . If any of my children should die without lawful heirs, their portion of property coming from my estate shall revert back to rest of my lawful legatees." It was held that a son who went into possession of his portion of the estate upon a division took an absolute and indefeasible title thereto, notwithstanding he later died without children. See also in this connection *Doty* v. *Wray,* 66 *Ga.* 153; *Taylor* v. *Meador,* 66 *Ga.* 230; *Wilcher* v. *Walker,* 144 *Ga.* 526 (87 S. E. 671); *Cock* v. *Lipsey,* 148 *Ga.* 322 (4) (96 S. E. 628); *Moore* v. *Cook,* supra. So, in the present case, Miss Lula. Martin having survived the date when the estate should have been divided, her interest in the property became absolute. The case really turns upon the question of survivorship as it arises from item 8, and it is immaterial what might have been the result if she had died without issue, or if she had died leaving a child or children, before the estate was ripe for a division. It matters not that the property was never in fact divided, since more than a reasonable time had elapsed for such division before the occurrence of any of the transactions which are here drawn in question. Certainly after the lapse of such period she and the other surviving devisees could either divide the property or keep the same together, according to their choice. *Amis* v. *Cameron,* 55 *Ga.* 449; *Bailey* v. *Ross,* 66 *Ga.* 354 (2); *DeVaughn* v. *McLeroy,* 82 *Ga.* 687 (3) (10 S. E. 211). In view of the terms of the will now before us, the present case is distinguished from the case of *Phinizy* v. *Wallace,* 136 *Ga.* 520 · (71 S. E. 896), and other cases relied on by counsel for the alleged trustee.

Since Miss Lula Martin had a fee simple and not a life-estate, there was no remainder over, and could be no unascertained remaindermen. In such case there could be no valid trust for the estate taken by her under the provisions of the will, she having attained her majority and being subject to no disability. *Gray* v. *Obear*, 54 *Ga.* 231 (3) ; Code of 1933, § 108-112. The deeds executed by T. J. Martin and Miss Lula Martin conveyed the absolute title to the Citizens Bank of Marshallville, subject only to their right of redemption by the payment of the debts, and upon their failure to pay at maturity the bank had the right to sell the complete title in accordance with the powers of sale. The judge erred as against the bank in holding that Miss Lula Martin had only an equitable life-estate, and in granting an injunction against the sale of any interest in the property. The judgment was favorable to the trustee, and there is no merit in the bill of exceptions as brought by that party.

*Judgment affirmed in case No. 10416. Judgment reversed in case No. 10434. All the Justices concur, except*

RUSSELL, Chief Justice, dissenting. This case involves the construction of a will. For the present purpose, I may concede that the general rules of construction are as stated by the majority. I can not agree, however, that the language of the instant will is such as to bring it within the orbit of these principles. Under the facts appearing, it is my view that the will of John Martin, deceased, created an equitable life-estate in his daughter, Lula Martin. It is true that the will contains no express language to this effect; but in item 8 it is declared that if either of the two named daughters should die without issue the property devised to her shall be divided equally among the surviving children and the widow, if living; and should either of the daughters die leaving a child or children, then her share will "descend" to such child or children. Every will must be construed according to its own particular language, and the intention of the testator must be diligently sought for and followed, if consistent with law. Such intention must be gathered from the whole instrument, including the attendant circumstances of the testator and his family. *Sumpter* v. *Carter*, 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274). If item 7 were standing alone, it would devise an estate in fee simple; and courts will not by construction reduce an estate once absolutely

devised in fee by limitations contained in subsequent parts of the will, unless the intention to so limit the devise is clearly and unmistakably manifest. *Kimbrough* v. *Smith,* 128 *Ga.* 690, 692 (58 S. E. 23) ; *Smith* v. *Slade,* 151 *Ga.* 176 (2) (106 S. E. 106). This is a well-settled rule of construction, and many other cases might be cited in which it has been followed. If item 8 of the will here involved had stopped with the statement that if either daughter should die without issue, her share of the estate should be divided equally between the surviving children and the widow, if living, Lula Martin would have taken either an estate in fee simple or a base fee,—which of the two it is not here material to consider. Compare *Munford* v. *Peeples,* 152 *Ga.* 31 (108 S. E. 454) ; *Hill* v. *Terrell,* 123 *Ga.* 49 (51 S. E. 81). But in view of the further proviso that if either daughter should die leaving a child or children, the share devised should descend or go to such child or children, there is to my mind no escape from the conclusion that neither daughter was intended to have more than a life-estate. The will provides for the two contingencies, the happening of any one of which would carry the property to other persons upon the death of such daughter, and leaves no condition upon which the property may vest in the daughter absolutely.

In reaching this conclusion I have necessarily considered, of course, the time of the death of such daughter as contemplated by item 8. Did the testator intend that the property devised to either of his daughters should go to other persons only in the event of the death of such daughter before the death of the testator himself or before the division or time for the division, or did he intend such a consequence upon the death of such daughter *at any time?* Notwithstanding the many cases dealing with the question of death and survivorship under different testamentary provisions, a testator may determine this question for himself consistently with law; and where he has used language sufficiently plain for that purpose, his intention must be respected and given effect by the courts. I think it plain from the will here under consideration that the share of each daughter was intended to go to other persons as stated in item 8, upon the death of such daughter at any time. See, in this connection, *Jones* v. *Crawley,* 68 *Ga.* 175; *Phinizy* v. *Wallace,* 136 *Ga.* 520 (supra). In view of the language of the will, the present case differs on its facts from *Wilcher* v. *Walker,*

144 *Ga.* 526 (supra), *Moore* v. *Cook,* 153 *Ga.* 840 (supra), *Schoen* v. *Israel,* 168 *Ga.* 779 (supra), and other cases relied on by counsel for the bank. The trial judge properly construed the will as creating only a life-estate in Miss Lula Martin. If this view could have been taken by the majority, several other questions would have been involved; but since under the ruling made such other questions do not require decision and have not been discussed in the decision as rendered, the writer himself will refrain from any expression upon them. It is enough to say that the will created an equitable life-estate in Miss Lula Martin, and that to this extent the judgment was right and should not be reversed.