## ALMAND *et al. v.* ALMAND, executor, *et al.*

1. Under the will set out in the first division of the opinion, the widow of the testator took an estate, during life or widowhood, in all of his property, real and personal.
 (*a*) Under item 3 of the will, George M. Almand, a son of the testator, took a vested remainder along with the testator's other children, subject to be divested in case of the death of such son before the death of the life-tenant. In that event it would pass to the other children.
 (*b*) It appearing that the remainder estate vested in such son, if it was contended that there was a subsequent divesting thereof by reason of his death before that of the life-tenant, the burden of showing such divesting would rest upon the person to whose case the establishment of it was essential; and in the absence of such proof the loss would fail upon the person failing to offer it.
2. Where a life-tenant has been in possession of the life-estate devised under the will of the testator for a period of thirty-nine years, an assent to such legacy by the executors will be presumed.
 (*a*) In such a case the assent to the legacy bequeathed to the life-tenant will enure to the benefit of the remaindermen.

(*b*) On the death of the life-tenant the executors can not, in such a case, take charge of the estate in remainder and administer it by selling the property, charging commissions, and paying counsel fees for the purpose of prosecuting litigation instituted by them, out of the proceeds of the estate.

### FEBRUARY 21, 1914.

Petition for direction. Before Judge James B. Park. Morgan superior court. September 11, 1912.

*Samuel H. Sibley,* for plaintiffs in error.

*E. W. Butler, T. J. Shackelford, F. C. Shackelford, P. Cooley, J. R. Irwin, Q. L. Williford, E. R. Lambert, J. M. Merritt, Noel P. Park,* and *M. C. Few,* contra.

HILL, J. The petition in this case was filed by Reuben L. Almand as the executor of the last will and testament of Reuben C. Almand, who died on December 25, 1871, against Sam Almand et al., asking for direction, etc. The material portions of the will are as follows: "1. I, Reuben C. Almand, will and bequeath to my wife, Malinda A. Almand, during her widowhood, all my property, both real and personal, after my debts are paid. 2. I . . also will and bequeath that if she [the widow] should marry, the property is to be equally divided among my children; and in event that she does not marry, at her death the property to be equally divided among my children. 3. I . . also will and bequeath that in the event of the death of my son George M. Almand, his portion of the property to go to the balance of my children. 6. I . . also appoint at my death my son W. A. Almand and my son R. L. Almand executors of my estate." The widow and life-tenant took charge of the estate under the will, and held and enjoyed it until her death on March 5, 1910. The petition alleged that the life-tenant left the "entire estate consisting of 367 acres of valuable land." The death of George M. Almand after the death of the testator is alleged, but whether he died before or after the life-tenant does not appear. The petition shows, that, including George M. Almand who died after the testator leaving a widow and children, there are nine shares in the estate of Reuben C. Almand, deceased. The case was submitted to the trial judge on the pleadings, who held that the children of George M. Almand had no interest in the property, and that the other claimants were entitled to a ⅛ interest each, and directed that the land held by the life-tenant from the death of the testator, December 25, 1871, to the

date of her death, March 5, 1910, be sold, and the money from the sale of the land and the rents be divided by the executor of Reuben C. Almand according to the terms of the order, and that certain fees and expenses of litigation should be paid out of the proceeds of the sale. To these rulings the plaintiffs in error, the heirs at law of George M. Almand, excepted.

1. The case turns upon the construction of item 3 of the will, as to whether the plaintiffs in error, who are the heirs at law of George M. Almand, have any interest in the estate. There is no question that the widow took an estate for life under the first item of the will. The petition so alleges, and the answer admits it. Under the second item of the will, if the widow died unmarried, the property was to go in fee simple equally to the children of the testator. There is no issue as to this item. George M. Almand was one of testator's children. Under this item, the widow dying unmarried, all the children of the testator took a vested remainder in fee to an undivided interest in the remainder estate, unless George M. Almand is excluded by virtue of item 3. That item provides that "in the event of the death of my son George M. Almand, his portion of the property to go to the balance of my children." Here was a manifest intention on the part of the testator to divest the interest of his son George M. on the happening of a contingency—the death of his son—at some time or other. It will be noted that the language is not "at the death of," as used in the second and sixth items of the will, but "in the event of" the death of his son George M. Almand. In the second item of the will the same words are used with reference to the life-estate left his wife: "in the event she does not marry;" which event was uncertain. But "at her death," which was certain, the property was to go as directed in that item of the will. The testator uses the same language in the appointment of his executors. He appoints them "at my death." Death is a certainty at some time, and the testator doubtless had this in mind when he wrote his will, but he also had in mind his son's death before some particular time, or before the happening of some contingency. What particular time, then, did the testator have in view when he said, "in the event of the death of" his son George M. Almand? Was it in the event of George's death before the testator's death? Or his death before that of the life-tenant, Mrs. Malinda A. Almand? Or his

death before the marriage of the life-tenant, or his death without children? We think the language used in item 3 of the will was intended to create a contingency, the happening of which would divest his son George of his share in the already vested estate. In cases of doubt the law favors the vesting of remainders at the earliest time. In construing wills the intention of the testator must be looked to, and words of survivorship shall refer to the death of the testator, unless a sufficient intention to the contrary appears. Civil Code (1910), § 3680. See also *Crossley* v. *Leslie*, 130 *Ga.* 783 (61 S. E. 851, 14 Ann. Cas. 703). It is true the word "survivor" is not used in this case, but we think the testator had in view the idea of survivorship after some one else had died. We think that the testator had in view the death of his son George before the death of the life-tenant—in that event his share was to go "to the balance of" his children, as provided in item 3 of his will. In this view, the testator's son George took under the 3d item of the will a vested remainder in the undivided estate, subject to be divested on his dying before the death of the life-tenant. It appearing that the remainder interest vested in such son, if it was contended that there was a subsequent divesting thereof by reason of his death before that of the life-tenant, the burden of showing such divesting would rest upon the person to the establishment of whose case it was essential; and in the absence of such proof, the corresponding loss would fall upon the person failing to offer it.

In the case of *Sumpter* v. *Carter*, 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274), the facts were somewhat similar to those of the instant case. There the devise was to the widow during her natural life or widowhood, and in case of the wife's not marrying, *"then and in that event* my will is that *at* her death [the italics the writer's] that my whole estate be then equally divided between my six children" (naming them). The will had a divesting clause, providing that "in case either of my said six children should depart this life without leaving issue, then their part of my estate to be equally divided between my other children," etc. It will be observed that in that case the time of the death of either of the children is not stated. It was held, that, "upon the death of the testator, each of his children took a vested remainder interest, subject to be divested in favor of the testator's other children, as substituted devisees and remaindermen, upon such child dying during the exist-

ence of the life-tenancy, without leaving a child who survived the life-tenant. The son having died before the life-tenant, leaving children who survived the latter, his remainder share became indefeasible upon the death of such life-tenant."

From what has been said, and the authorities cited, we reach the conclusion that it was the intention of the testator to give his widow the property devised for life or during her widowhood; and in the event of her marriage, or at her death, all his children were to have a vested remainder, the share of his son, George M. Almand, to be divested in the event he died before the life-tenant. It follows that if George M. died intestate after the testator's death, and before the life-tenant died, leaving a wife and children, they take his share as his heirs at law.

2. The court erred in holding that the executors of Reuben C. Almand should administer and sell the land, collect the rents, and pay themselves commissions, and also attorney's fees. The life-tenant, having been in possession of the land from the date of the testator's death in 1871 to the date of her own death in 1910, will be presumed to have received the assent of the executors to the legacy. Such assent would enure to the benefit of the remaindermen. *Toombs* v. *Spratlin,* 127 *Ga.* 766, 772 (57 S. E. 49). The land, at the death of the life-tenant, under such circumstances, would not be a part of the testator's estate to be administered. The remaindermen, including the plaintiffs in error, are tenants in common, and the executors of the will of the testator can not administer upon the estate by collecting rents, selling the land, etc., nor charge commissions as executors, nor pay attorneys' fees out of the proceeds of the sale of the land. There is nothing in the record to show that it is necessary to recover the land from the legatees or to administer it for any legal purpose.

*Judgment reversed. All the Justices concur.*