SCHLEY *et al. v.* WILLIAMSON, executor, *et al.*

CANFIELD *et al.,* executors, *v.* SCHLEY *et al.*

1. A testator executed a will in 1874, and died in the same year, having bequeathed and devised, by item one thereof, all of his estate, real, personal, and mixed, in trust for his wife and daughter, " during the life of my said wife, the income to be equally divided between them, share and share alike; and in case my said wife shall depart this life leaving my said daughter her surviving and unmarried, then the whole of the income of my said estate to go to my said daughter while she continues unmarried; and at and after her death, still being unmarried, then the whole of my said property to be equally divided between my sons, share and share alike, the child or children of a deceased son to take the share to which the parent would have been entitled, if in life, to them and their heirs forever." By item three of his will the testator provided that: " If my daughter shall marry after the death of my said wife, then I direct that my estate be equally divided, and that one half shall be turned over to my said daughter in her own right and to her sole and separate use absolutely in fee simple, and that the other half be equally divided between my sons, share and share alike, the child or children of a deceased son to take the share to which the parent would have been entitled if in life, to them and their heirs forever." The wife and then the daughter died subsequently to the death of the testator, both unmarried. The five sons of the testator were living at the death of testator. *Held,* that testator's wife and daughter took a life-estate as provided in the will, and the sons (five) took a vested remainder in one half of the estate, subject to take the whole estate upon the daughter dying unmarried.

2. The court erred in construing the will as conveying contingent remainders to the five sons at testator's death, instead of vested remainders as held in the first headnote; and also in other rulings based upon the theory that the will conveyed contingent remainders.

3. The instrument executed on May 15, 1903, by Dr. James M. Schley, one of the five sons of testator, to his wife, Margaret T. Schley, conveyed his vested interest in his father's estate.

4. The wives and children of the sons of testator, who died before the death of the life-tenant, took by inheritance, as heirs at law of such deceased sons, subject to the liens created by the latter in their lifetime.

`Nos. 2721, 2747. APRIL 14, 1922.

Equitable petition. Before Judge Meldrim. Chatham superior court. May 4, 1921.

W. W. Williamson and Raiford Falligant, executors, and Leona Guerard. Gadsden (formerly Schley), executrix of the last will and testament of James M. Schley, brought a petition for direction, etc., against Robert Montford Schley, of Buffalo, New York, Catherine Schley Hardwicke, of Lewiston, New York, William Sullivan Schley, of Shirley, Mass. (children of William Sullivan

Schley, now deceased), Lucy J. Schley, widow of George Schley, of Titusville, Pa., Dr. James M. Schley, of New York City, Katherine Beckwith Variel, of Waterbury, Conn., Margaret Elfrida Harper, of Bonnell, Syosset, L. I., James M. Schley Jr., of New York City, Henry Spalding Schley, of New York City (the last four named persons being the children of Dr. James M. Schley, of New York City), Leona G. Gadsden, formerly Schley, of Savannah, Georgia, Marianne Schley Rogers, of Shreveport, La., the widow and daughter respectively, of John Sullivan Schley, deceased, and George F. Canfield and the Farmers Loan & Trust Company, both of New York City, the duly appointed and qualified executors and trustees of and under the will of Margaret T. Schley, now deceased, formerly wife of Dr. James M. Schley, of New York City, alleging that they are all of the remaindermen, heirs at law, and claimants under the will of James M. Schley, deceased, and are all sui juris. The prayer of the petition was that the court determine the persons entitled to share in the distribution of said estate, and the proportion to be received by each, etc. Also that commissioners be appointed to appraise and divide the property of the estate in kind among those entitled thereto, or that plaintiffs be authorized and directed to sell the real and personal properties belonging to the estate and distribute the cash derived therefrom among those entitled thereto under direction of the court. A copy of the will of James M. Schley was attached to the petition, the material portions of which are as follows:

"Item 1. After the payment of my just debts and funeral expenses, I give, devise, and bequeath to my executrix hereinafter named, and to her successors, all of my estate and property, real, personal, and mixed, of whatsoever kind and wheresoever situated, in and upon the following conditions, limitations, and trusts, namely, in trust for the sole and separate use, benefit and behoof of my wife, Marianne A. Schley, and my daughter, Sarah Swan Schley, during the life of my said wife, the income to be equally divided between them, share and share alike; and in case my said wife shall depart this life leaving my said daughter her surviving and unmarried, then the whole of the income of my said estate to go to my said daughter while she continues unmarried, and at and after her death, still being unmarried, then the whole of my said property to be equally divided between my sons, share and share

alike, the child or children of a deceased son to take the share to which the parent would have been entitled if in life, to them and their heirs forever.

" Item 2.  In case my said daughter shall depart this life being unmarried and leaving my said wife her surviving, then I direct that the whole income of my said estate shall go to the sole use of my said wife during her life, and at and after her death that the whole property shall be equally divided between my sons, share and share alike, the child or children of a deceased son to take the share to which the parent would have been entitled if in life, to them and their heirs forever.

" Item 3.  If my daughter shall marry after the death of my said wife, then I direct that my estate shall be equally divided, and that one half be turned over to my said daughter in her own right and to her sole and separate use absolutely in fee simple, and that the other half be equally divided between my sons, share and share alike, [the child or children of a deceased son to take the share to which] the parent would have been entitled if in life, to them and their heirs forever.

"Item 5.  I expressly declare and direct that the foregoing pro-death of my said wife, then I direct that an equal half of the income of my said estate shall be paid over to my said daughter during the life of my said wife, and after the death of my said wife then my property to be divided as in the third item of this my will; provided, the half hereby devised to my daughter to go to any child or children she may leave, in case after marrying she may depart this life before her mother, share and share alike.

" Item 5.  I expressly declare and direct that the foregoing provisions in favor of my wife are in lieu of her right of dower; and I hereby nominate and appoint my said wife, Marianne A. Schley, to be the sole executrix of this my last will and testament, with liberty to appoint her successor by will."

There were other exhibits attached to the petition, those material being as follows:  (1)  " In consideration of the sum of one dollar ($1.00) to me in hand paid and other valuable consideration, I hereby sell, assign, transfer, and convey unto Margaret T. Schley all my property of whatsoever kind and nature, including all my stocks and bonds; and I do hereby irrevocably constitute and appoint the said Margaret T. Schley my attorney, and I vest in her

full power to do whatsoever is necessary to vest complete title in her or in any one she may designate, of all my property. " This instrument was dated May 15, 1903, was signed by J. Montford Schley before two witnesses, and acknowledged before a notary public. (2) A security deed executed by George Schley to J. M. Schley, dated December 1, 1896, to secure a debt of $11,215.03, the property being " all his right, title and interest, claim and demand whatsoever, in and to the estate of James. Montford Schley, late of Savannah, Georgia, deceased." (3) A security deed from Freeman W. Schley to James M. Schley, dated September 29, 1885, to secure a loan of $500, the property conveyed being " all his right, title, interest, claim or demand whatsoever that he now hath or may hereafter have in the estate of his father, Dr. James M. Schley Sr., late of the County of Chatham, and State of Georgia, deceased."

The defendants, James M. Schley Jr. and others, answered the petition, admitting most of the allegations contained therein, and averring that for want of sufficient information they could neither admit nor deny some of the others. They prayed that the court decree that upon the death of the testator each of his sons then living took a vested equitable estate in remainder, only subject to be divested in part if Sarah Swan Schley, the daughter of testator, should marry; and that, Sarah Swan Schley having died unmarried, the estate of George Schley and Freeman W. Schley were conveyed to and are now indefeasibly vested in Dr. J. M. Schley, by reason of certain conveyances set out above; and that the estates of William S. Schley and John S. Schley passed by their respective wills. Also, that the instrument dated May 15, 1903, if in fact executed by Dr. James M. Schley, did not convey to Margaret T. Schley the remainder interest in realty or personalty of Dr. James M. Schley in the estate of the testator, but, if the court should find that the instrument conveyed a remainder interest in personalty, that the court will adjudge and decree that the remainder interest. of Dr. James M. Schley in the realty belonging to the estate of the testator was not thereby conveyed, and that the remainder interest (including the remainder interest of George Schley and Freeman W. Schley conveyed to Dr. James M. Schley by deed to secure debt) is now indefeasibly vested in respondents' father, Dr. James M. Schley; that plaintiffs be ordered and directed to sell all real

and personal property in their hands at public or private sale in their discretion, and to distribute the proceeds as follows: three fifths to Dr. James M. Schley, one fifth in accordance with the will of William S. Schley, and one fifth in accordance with the will of John Sullivan Schley. An amendment to the answer was offered, averring in effect that the instrument dated May 15, 1903, does not have the effect in law as contended for by the plaintiffs, but is simply a power of attorney and was intended only as such, and was executed for the purpose of giving to the defendants' mother the right to use what income her husband had in the discharge of his debts and in the management of his affairs, which their father could not manage because of his physical condition.

The petition was also answered by. Dr. James M. Schley, who admitted a number of the allegations, including that of the execution of the conveyance from himself to his wife in 1903; but he averred that because of the result of an x-ray examination made upon his person he was unable to practice his profession or to manage his own business affairs, and that under these circumstances he and his wife agreed that it was advisable to have the transfer of his property made to his wife in order that she might be in a position to pay his expenses from his own funds, and to change his investments, and to do whatever they might agree upon as necessary or advisable in connection with his personal property, etc. He avers that he has since been advised and believes that upon the death of testator each of testator's sons then living took a vested equitable estate in remainder, subject only to be divested in part by the marriage of Sarah Swan Schley; that on May 15, 1903, there was vested in respondent not only his vested estate under the testator's will, but also the vested estates of his brothers, George and Freeman W. Schley, who had conveyed to respondent their interests under the will; and that the instrument executed by him to his wife on May 15, 1903, is not sufficient in law to convey to Margaret T. Schley his interest in either the real or personal estate of the testator; but if the court .should hold otherwise, the respondent avers that through a mutual mistake of both himself and his wife, Margaret, the instrument does not express the agreement reached by them and does not effectuate their intention, and should be reformed by inserting between the words "my" and " property " the word " personal." The prayer was, that the court

decree that upon the death of testator there vested in each of his sons then living an equitable estate in remainder, subject to be divested only in part by the marriage of Sarah Swan Schley, and that the one-fifth share which thus vested in respondent, together with the one-fifth shares which vested in his brothers, George and Freeman W. Schley, are now indefeasibly vested in him, the life-estate having terminated and Sarah Swan Schley having died unmarried; that the remaining two fifths are indefeasibly vested as follows: one fifth in accordance with the will of William S. Schley, and one fifth in accordance with the will of John Sullivan Schley; that the instrument of May 15, 1903, did not convey to Margaret T. Schley the vested equitable estate in remainder of respondent, or the vested equitable estates in remainder of George Schley and Freeman W. Schley, either real or personal, but, if the court should hold otherwise, that it decree that the instrument of May 15, 1903, be so reformed as to effectuate the intention of the parties, by inserting between the words " my " and " property " in both places in which they occur the word " personal." By a further amendment Dr. James M. Schley averred that he had no recollection of executing the instrument of May 15, 1903, etc.

Other respondents, Robert Montford Schley et al., the children of William S. Schley, deceased, filed answers in which they prayed that the court adjudge that the interests of George Schley and Freeman W. Schley were contingent equitable estates in remainder when they respectively executed the mortgages and deeds to secure debt, mentioned in the petition, and that the conveyances are void, and that the same be canceled of record, and that the estate of James M. Schley, the testator, is indefeasibly vested; one third in respondents as the children of William S. Schley, who were living at the time of the death of Sarah Swan Schley; one third in Marianne Schley, who was living at the time of the death of Sarah Swan Schley; one third in J. M. Schley, etc.

George F. Canfield and the Farmers Loan & Trust Company, executors and trustees of Margaret T. Schley, filed an answer and cross-bill, and prayed that the court find that under the terms of the will of James M. Schley the remainder estate vested absolutely in his sons at the time of the death of the testator as to one half portion of the remainder interest, and that as to the other half portion the court consider the same as a vested interest,

subject only to be divested by the happening of a condition subsequent, which did not occur, etc. These defendants also amended their answer by inserting in paragraph (c) of the prayer between the words " personalty " and " said " the words " vested or contingent."

Marianne S. Rogers, the only child of John Sullivan Schley, deceased, answered the petition and prayed an order of the court adjudging that the interests of George Schley and Freeman W. Schley were contingent equitable estates in remainder when they executed the mortgages and deeds to secure the debt therein mentioned, and that the conveyances are void and of no effect, etc.

The case was submitted to the court upon the pleadings, and upon an agreed statement of facts which was as follows: " It is agreed between George F. Canfield and the Farmers Loan & Trust Company, executors and trustees under the will of Margaret T. Schley, on the one hand, and James M. Schley Jr., Henry Spalding Schley, and Katherine Schley Variel, on the other hand, as follows: On or about October 14th, 1920, Mr. George F. Canfield and Mr. James M. Schley Jr., visited Dr. James M. Schley at the Buckingham Hotel in New York City, for the purpose of ascertaining whether or not Dr. Schley executed the document signed J. Montford Schley, and dated May 15, 1903, attached as Exhibit ' C ' to the bill of direction in this case, and for the purpose of ascertaining what recollection, if any, Dr. Schley had of the execution of the document, the purpose for which it was executed, and the circumstances which surrounded its execution. At that time Dr. Schley recognized and acknowledged his signature to the document, a copy of which is attached to the bill and marked ' Exhibit C,' but stated that he had no recollection of the matter at all, outside of the document itself. Dr. Schley is now in feeble health and has been ill for many years. That: 1. When Dr. James M. Schley, respondent, executed the instrument, he was mentally competent to do so. That he has never been, and is not now, imbecile or lunatic, but his mental condition is such, as a result of invalidism for twenty-five years and his paralysis for a part of that time, that his memory is not good, and his testimony, if taken in this proceeding, would be of little assistance, if any. 2. In 1898, and while Dr. Schley was engaged in the practice of medicine in New York City, he became permanently disabled and

paralyzed as a result of an x-ray examination, and has been in that condition ever since, added to which he has suffered a stroke of paralysis, and, since 1896, has been unable to practice his profession or to manage his own affairs. 3. Dr. Schley's wife, Margaret T. Schley, was a wealthy woman in her own right when Dr. Schley executed the instrument." Also a copy of the last will and testament of Sarah Swan Schley, conveying both real and personal property, which will had been probated in the State of New York.

After consideration the court rendered the following decree: "The above-entitled cause coming on to be heard before me on the —— day of February, 1921, upon the bill of direction and the answers of defendants and proofs submitted; and it appearing that all parties defendant had been properly served and cited to appear according to law: Now, after hearing and considering all evidence produced and the arguments of counsel for the respective parties, and pursuant to the opinion of the court rendered herein on March 7, 1921, it is ordered, adjudged, and decreed as follows: 1. That the remainder estates created and set up under the terms of the will and of the testator, the late John M. Schley, were contingent remainders, and did not vest in the five (5) sons of the testator at his death. 2. That the entire estate both real and personal be sold either as a whole or in parcels, by the executors and executrix at public or private sales, at such time or times, and for such prices, as in their good judgment will be to the best interest of the estate, purchasers at such sale or sales not to be required to see to the application or disposition of the proceeds thereof, nor shall such sale or sales be subject to the confirmation of the court; and that the balance of the proceeds of said sale or sales, after payment of debts, if any, of said estate, and the costs of administration and of this proceeding, and of any further costs and expenses incurred in the sale and distribution of said estate, be distributed and paid out as follows: (a) One third to the children of the said William Sullivan Schley, now deceased, who are Robert M. Schley, Catherine Schley Hardwicke, and William Sullivan Schley. (b) One third to the personal representatives and trustees of the estate of the late Margaret T. Schley. (c) One third to Marianne Schley Rogers, only child of John Sullivan Schley, deceased. 3. That the said Lucy J. Schley, widow of the late George Schley, has no

interest in said estate of James M. Schley, deceased. Said George Schley having died without issue, the share to which he would have been entitled, had he survived the life-tenants, reverted to said estate. 4. That the interest of Dr. James M. Schley, son of the testator, was assigned and transferred to his wife, Margaret T. Schley, on May 15, 1903, by the instrument in writing executed by said Dr. James M. Schley on that date, a copy of which is attached to the petition in this case and marked ' Exhibit C. ' 5. That the interest in said estate which would have gone to the said John Sullivan Schley, had he survived the life-tenants, vested in his only child, Marianne Schley (now Rogers), to the exclusion of the widow, Leonora G. Schley (now Gadsden), notwithstanding the terms of the will of the said John Sullivan Schley, bequeathing his said widow a life-estate in said interest. 6. That the said Freeman W. Schley having died before the life-tenants, unmarried and without issue, the interest in said estate to which he would have been entitled, had he survived the life-tenants, reverted to the estate. 7. That the said William Sullivan Schley having died before the termination of the life-estates, the share in said estate to which he would have been entitled, had he survived the life-tenants, vested in his three (3) children, share and share alike, to wit: Robert M. Schley, Catherine Schley Hardwicke, and William Sullivan Schley, upon the death of the life-tenant. 8. That the deeds to secure debt and mortgages mentioned and described in paragraphs seven and thirteen of said petition as having been made, executed, and delivered by said George Schley and Freeman W. Schley, respectively, to the said Dr. James M. Schley, of New York, or any other deeds to secure debts, mortgages or liens which may have been given or created during their lifetimes by the said George and Freeman W. Schley, are void and of no effect, and the holders of said deeds to secure debts and mortgages are hereby required to surrender and cancel the same of record. 9. That the case be kept open upon the docket of the court, for the taking of such other orders and decrees as may be necessary in the final winding up of said estate."

To this judgment the plaintiffs in error excepted on the following grounds: (1) Because the remainder interest created by the testator's will was not contingent upon any son's surviving the life-estate and upon his leaving a child or children who should survive

the life estate, if he did not. (2) Because the remainder interest created by the testator's will was a vested equitable remainder, one fifth of which vested at the time of the testator's death in each of his five sons. One half of each son's share vested indefeasibly; the other half was subject to be divested by the marriage of the life-tenant, Sarah S. Schley, which never occurred, and said half was therefore never divested. (3) Because said vested equitable remainders could be conveyed or assigned by the remaindermen at any time, and said remainder interests of the remaindermen George Schley and Freeman W. Schley were so conveyed to Dr. James M. Schley, in whom there thus became vested a three-fourths interest in the testator's estate. (4) Because the deeds to secure debt and mortgages executed and delivered by George Schley and Freeman W. Schley to James M. Schley are valid and not void. (5) Because the instrument of May 15, 1903, signed by Dr. James M. Schley and attached to the bill as "Exhibit C" did not pass to Margaret T. Schley the remainder interest of Dr. James M. Schley, for the following reasons: (a) It was not the intention of the parties to the said instrument to convey the said remainder interest. (b) Said instrument was not sufficient in law to convey a vested remainder interest in real estate. (c) If the remainder interest of Dr. James M. Schley on the date of said instrument was contingent and not vested, then said contingent interest could not be conveyed, and said instrument is insufficient in law to convey said contingent interest.

*Lawton & Cunningham, Connerat & Hunter,* and *Satterlee, Canfield & Stone,* for plaintiffs in error.

*Stephens, Barrow & Heyward* and *Leo A. Morrissy,* contra.

HILL, J. (After stating the foregoing facts.) The controlling question in this case is whether the remainders created by the testator as set out in the foregoing facts were contingent remainders as held by the trial judge, or whether they were vested remainders under the will. The distinction between a contingent and a vested remainder under given facts is often difficult to ascertain. Our code defines a contingent remainder to be one limited to an uncertain person or upon an event which may or may not happen. Civil Code (1910), § 3676. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. Civil Code (1910), § 3676. Various tests

have been suggested for determining whether in a given case a future estate is a vested or a contingent remainder. One of these tests is given by Fearne in his work on Remainders, viz.: "The present capacity of taking effect in possession, if the possession were to become vacant, . . distinguishes a vested remainder from one that is contingent." Fearne on Con. Remainders, 216. In Tiedeman on Real Property (3d ed.), § 297, it is said: "If the remainder is contingent, there is no definitely ascertained person who can take the legal seisin, which, together with the actual possession of the tenant for years, as his bailee, will constitute the complete and lawful seisin to the land." Citing Co. Lit. 143 a; Fearne Con. Rem. 285, 2 Wash. Real Prop. 538, 543; Will. Real Prop. 252; Doe v. Considine, 6 Wall. 474 (18 L. ed. 869); Brodie v. Stephens, 2 Johns. (N. Y.) 289; Corbet v. Stone, T. Raym. 151; 2 Black. Com. 171. This same author declares that a vested remainder is capable of alienation by any mode of conveyance which does not require livery of seisin, and even with livery, where the particular estate is not a freehold, and the consent of the tenant to entry upon the land for that purpose is obtained. § 299. It is also said: "Wherever there is a doubt as to whether a remainder is vested or contingent, the courts always incline to construe it a vested estate, . . and very often a remainder will be construed to be a vested estate upon condition subsequent, liable to be divested by the happening of a contingency, rather than to declare it a contingent remainder." Id. § 301; *Clanton* v. *Estes,* 77 *Ga.* 352 (1 S. E. 163). In a note to Coke upon Littleton, by Butler & Hargraves (265 a, note 2), the distinction between a contingent remainder and one that is vested is thus laid down: "A remainder is contingent, either where the person to whom it is limited is not *in esse;* or where the particular estate may determine before the remainder can take place; but that, in every case, where the person to whom the remainder is limited is *in esse,* and is actually capable or entitled to take on the expiration, or sooner determination, of the particular estate, supposing that expiration, or determination, to take place at that moment, there the remainder is vested."

In the case of *Almand* v. *Almand,* 141 *Ga.* 372 (81 S. E. 228), the third item of testator's will, then under review, was as follows: "I . . also will and bequeath that in the event of the death

of my son, George M. Almand, his portion of the property to go to the balance of my children." In construing that item of testator's will it was said, " We think that the testator had in view the death of his son, George, before the death of the life-tenant — in that event his share was to go ' to the balance of his children,' as provided in item three of his will. In this view, the testator's son, George, took under the third item of the will a vested remainder in the undivided estate, subject to be divested on his dying before the death of the life-tenant." And see *Wiley* v. *Wooten,* 140 *Ga.* 16 (78 S. E. 335).

In the case of *Sumpter* v. *Carter,* 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274), the facts are somewhat similar to those under consideration. In that case the testator, who died in 1864, left a will in which was the following item: " I give, bequeath, and devise to my beloved wife . . all of my property and effects . . . during her natural life or widowhood, . . and in case of my said beloved wife not intermarrying, then and in that event my will is that at her death that my whole estate be then equally divided between my six children " (naming them). There was a divesting clause in the will by which it was declared that " in case either of my said six children should depart this life without leaving issue, then their part of my estate to be equally divided between my other children, to be controlled in the same way as first above directed." None of the testator's children had married at the time of his death, and his widow did not marry again. It was held: " That, upon the death of the testator, each of his children took a vested remainder interest, subject to be divested in favor of the testator's other children, as substituted devisees and remaindermen, upon such child dying during the existence of the life-tenancy, without leaving a child who survived the life-tenant. That, the son having died before the life-tenant, leaving children who survived the latter, his remainder share became indefeasible upon the death of such life-tenant. And that therefore, under a deed executed during the life-tenancy, by which the son conveyed to another all his interest in described realty which belonged to the testator at the time of his death, the grantee, upon the death of the life-tenant, became indefeasibly entitled to the son's remainder share therein." Divesting clauses, especially of a remainder, operate so as to vest the estate indefeasibly at the earliest possible

period. *Sumpter* v. *Carter* (supra) ; Civil Code (1910), § 3680. Compare *Clanton* v. *Estes* (supra) ; *Morse* v. *Proper,* 82 *Ga.* 13 (8 S. E. 625) ; *Fields* v. *Lewis,* 118 *Ga.* 573, 576 (45 S. E. 437) ; *Collins* v. *Smith,* 105 *Ga.* 525, 528 (31 S. E. 449) ; *Powell* v. *McKinney,* 151 *Ga.* 803 (108 S. E. 231). The case of *Harris* v. *McDonald,* 152 *Ga.* 18 (108 S. E. 448), is not in point. In that case the language of the third item of the will of Mrs. Sarah M. Harper is: " After paying my debts and deducting the property mentioned in the second item of this my last will and testament, I give and bequeath to O. H. Jones in trust for my daughter, Lula N. Harper, two thirds of my estate for her use during her natural life, and at her death to her children should she leave any ; and if she should leave no children or descendants of a child or children, then to my brother, McCormick Neal, should he be in life, or, if he is dead, then to his children him surviving share and share alike." There the language employed contemplates a contingency based upon an event which may not happen, i. e., the life-tenant leaving children or descendants of a child or children. In that case there was an uncertainty as to the *persons* to take in remainder, and it was properly held that the will there under consideration created under our law a contingent remainder. See Civil Code (1910), § 3676. In delivering the opinion of the court in that case Mr. Justice George said, " If the devise had been simply ' and at her death to her children,' the remainder would have been vested in the children as they were born. But the superadded words, ' should she leave any,' made the remainder contingent."

In view of the foregoing authorities how stands this case? The first item of testator's will devises all of his estate, real and personal and mixed, in trust for the sole benefit of testator's wife, Marianne A. Schley, and his daughter, Sarah Swan Schley, during the life of the wife, the income to be equally divided between them, provided that in case the wife departed this life leaving the daughter surviving and unmarried, then the whole of the income of testator's estate was to go to the daughter while she continued unmarried, and at and after her death, she still being unmarried, "then the whole of my said property to be equally divided between my sons, share and share alike, the child or children of a deceased son to take the share to which the parent

would have been entitled if in life, to them and their heirs forever." The second item of the will provided that in case the daughter should die being unmarried and leaving the wife of testator surviving, then it was directed that the whole of the income of the estate should go to the sole use of the wife during her life, and after her death that the whole property " shall be equally divided between my sons, share and share alike, the child or children of a deceased to take the share to which the parent would have been entitled if in life, and to them and their heirs forever." The third item provides that if the daughter shall marry after the death of testator's wife, the testator's estate shall be equally divided and that " one half be turned over to my said daughter in her own right and to her sole and separate use absolutely in fee simple, and that the other half be equally divided between my sons, share and share alike, the child or children of a deceased son to take the share to which the parent would have been entitled if in life, to them and their heirs forever." By the fourth item of the will it is provided, in case the daughter should marry before the death of testator's wife, that " an equal half of the income of my said estate shall be paid over to my said daughter during the life of my said wife, and after the death of my said wife then my propery to be divided as in the third item of this will provided, the half hereby devised to my daughter to go to any child or children she may leave, in case after marrying she may depart this life before her mother, share and share alike." The fifth item directs that the foregoing provisions in favor of the wife are in lieu of her right to dower, etc. It appears that the five sons were all in life at the death of the testator. It also appears that the daughter died without having married. In these circumstances we are of the opinion that the remainders provided for in testator's will, after the creation of the life-estates, are not limited to uncertain persons, but to certain persons, who are the five sons of the testator who were in life at his death. These remainders in " the whole of my said property to be equally divided between my sons, share and share alike," are limited upon the event of testator's daughter dying single. She did die single, and we are of the opinion that under the above provisions of the will the five sons, who were in life at the death of the testator, took a vested remainder interest in one half of testator's estate

at his death, subject to be enlarged upon the daughter's dying without having married; and as it appears that she did die without having married, it follows that the five sons of the testator took a vested-remainder interest in the testator's estate. From what has been said above it follows that the court below erred in holding that the remainders created by testator's will were contingent remainders and not vested remainders, and also in the other rulings based on the theory that the will created contingent remainders.

We are also of the opinion that the interest of Dr. James M. Schley, one of the five sons of the testator, was assigned and transferred to his wife, Margaret T. Schley, on May 15, 1903; and that the instrument conveying his vested interest in his father's estate was a valid transfer of the same, as against any objection made thereto.

We are further of the opinion that the heirs at law of such sons of testator as may have died before the life-tenant died would inherit the share or shares of such sons as their heirs at law, respectively.

We are likewise of the opinion that the deeds and mortgages executed and delivered by George Schley and Freeman W. Schley, respectively, to Dr. James M. Schley, or any other deeds, mortgages, or liens which may have been given or created during their lifetime by George Schley and Freeman W. Schley, are not void for the reason that they could not convey a contingent-remainder interest in the estate of their father; holding as we do that their interest was a vested and not a contingent-remainder interest, and as such being subject to be transferred or assigned.

The other rulings of the court not in conflict with the above are not erroneous for any reason assigned.

*Judgment reversed on both main and cross-bill of exceptions. All the Justices concur.*