1. Under the 10th and 11th items of the will in question an estate for the life of testatrix's son, Horace Sr., was created, with a vested remainder over to the grandchild of testatrix, Horace Jr., who was in life at the time of the death of testatrix. Such remainder estate in Horace Jr. was subject to open so as to include any after-born children of Horace Sr., and subject also to the provision that, should any widow of Horace Sr. survive him, she should take along with his child or children a share in remainder for life, such life interest of such widow being subject to be divested in the event of her remarriage.
2. Since the court held, with no exceptions being taken, that a contingent remainder was created in favor of the alternative eleemosynary remaindermen, no question is presented as to whether or not Horace Jr. took an absolute vested remainder such as would go on the death of his father to the heirs or assigns of Horace Jr., and since the only contention of Horace Smith Sr., the sole plaintiff in error, in his exceptions to the decree of the court is that he, Horace Sr., took the property in fee upon the death of testatrix, rather than a life interest, it can not be properly determined under this proceeding and the exceptions taken to the decree rendered therein whether, if Horace Jr. or some brother or sister of Horace Jr. should predecease Horace Sr., leaving children, such last-mentioned children would take by representation under the Code, § 85-504, in place of their deceased parent, and accordingly no ruling on any such additional question is made.
 No. 15384. FEBRUARY 21, 1946.
Horace Smith as administrator cum testamento annexo of the estate of Mrs. Lela W. Smith, deceased, and Horace Smith individually, as plaintiffs, brought suit for construction and direction of the will of Mrs. Lela W. Smith, a copy of which was made an exhibit to the pleadings, and named Dr. J. R. Smith, Horace Smith Jr., a son of petitioner, Baptist Orphans' Home at Hapeville, *Page 374 
Georgia, and Home for the Aged at Macon, Georgia, as defendants.
The items of the will requiring construction and direction were as follows: "Item ten — I give all the rest, residue, and remainder of my estate both real and personal, of every name and nature and wheresoever it may be situated, to my son Horace Smith, to be managed as hereafter directed; first I want my son to care, when necessary, for his father Dr. J. R. Smith, as said son has often heard me speak, but it shall not be incumbent on said son to in any way help anyone connected or associated with the father of said son. I want said son to be mindful of my uncle John Norman, if he should need assistance; said uncle has been kind and a friend to me. I direct that my estate remain intact, reinvesting when it is best; my son Horace to have income from said estate as hereafter designated. In the event of death of said son, the legitimate heirs of said son to succeed to the estate, including his widow so long as she is of good moral character and name; said widow is not to have the disposition of said estate, her interest ceasing at her marriage or death. The clause relating to my husband to remain in effect. If my son Horace should pass away without legitimate heirs, said estate is to remain intact in hands hereafter named and so managed to the best advantage and income distributed as follows: Three Hundred ($300.00) dollars to be paid to my Aunt Emma Upshaw, during her natural life, the remainder to be equally divided between the Baptist Orphans' Home at Hapeville and the Home for the Aged at Macon, said funds to be perpetual trust funds. The fund for the Home at Hapeville to be known as the Stacy Watson fund, in memory of my sainted mother. The fund for the Home at Macon to be known as the J. P. Watson fund in memory of my father and brother who had the same name. The clause regarding my husband Dr. J. R. Smith remains in effect.
"Item eleven — I hereby name and appoint my uncle John Norman as adviser to my son Horace. I appoint the Fourth National Bank of Atlanta, Ga., executor of my will to handle as follows: For five years, the income is to be paid by said Bank to my son Horace; at the expiration of said five years, if said son's business qualifications warrant, one-half of said entire estate shall be paid into the hands of said son. Income from the remainder of said *Page 375 
estate shall be paid said son for another five years, when, if said son is of sound and mature business judgment, said remainder of the estate shall be turned over to said son to manage and hold for himself and legitimate heirs. In the event of the death of said son, his legitimate heirs will succeed him, said estate not to be divided till all heirs have reached their legal majority."
By consent of counsel the case was heard by the judge without the intervention of a jury. From the evidence it was made to appear that there was no such institution in Bibb County, Georgia, known as "The Home for the Aged." If further appears from the evidence that the executor named under the will filed a renunciation as such, and that the son qualified as administrator cum testamento annexo, and proceeded to probate the will in solemn form. The husband of the testatrix filed an answer to the petition brought by the administrator, in which he sought to attack the validity of the will and to set up a counterclaim against the estate of the testatrix. This answer was stricken, and no exceptions to such order were taken. The evidence further discloses that the son was fifty years of age at the death of the testatrix, married, and the father of one minor child; that he is sui juris, of good habits and a man of considerable attainments and responsibilities, and was mentally competent to manage his own estate.
The court construed the above-quoted portions of the will and entered a decree as follows: "1. After making specific devises in the previous items, Item Ten of the will provides in part as follows: All of the estate, after payment of the aforementioned devises, is bequeathed to Horace Smith, son of testatrix, said son to have the income from said estate as thereafter designated. It contained provisions concerning the disposition of the property in the event of the death of said son which are hereinafter stated.
"Construing the will as a whole, it is ordered, adjudged, and decreed that the title and interest under said will taken by Horace Smith at the time of the death of testatrix is not a fee-simple title as he contends, but is a life estate, his estate being a legal and not an equitable estate, no trust being created for Horace Smith under the will. Neither is said estate enlarged into a fee-simple estate by virtue of the income therefrom being devised to Horace Smith, as contended by his counsel. Said life estate vested in Horace Smith under conditions contained in Item Eleven of the will which *Page 376 
recites `for five years, the income is to be paid to my son Horace; at the expiration of said five years, if said son's business qualifications warrant, one-half of said estate shall be paid into the hands of said son. Income from the remainder of said estate shall be paid said son for another five years, when, if said son is of sound and mature business judgment, said remainder of the estate shall be turned over to said son to manage and hold for himself and legitimate heirs.'
"2. The will provides in part that, `in the event of the death of said son, the legitimate heirs of said son to succeed to the estate, including his widow, so long as she is of good moral character and name — said widow is not to have the disposition of any of said estate, her estate to cease at her marriage or death.' It further provided that if her son Horace should pass away without `legitimate heirs,' the estate should be kept intact and the income distributed as follows: $300 to testator's aunt, Emma Upshaw, and `the remainder to be equally divided between the Baptist Orphans' Home at Hapeville, Georgia, and the Home for the Aged at Macon, Georgia, said funds to be perpetual trust funds.' Item Eleven provides that, `in the event of the death of said son, his legitimate heirs will succeed him, said estate not to be divided until all heirs have reached their legal majorities.'
"It is ordered, considered, and adjudged that under the foregoing provisions and under the will as a whole:
"(a) The expression `legitimate heirs' would ordinarily mean the children of Horace Smith as a class (Code Section 85-504) but the will expressly recites that the term `legitimate heirs' shall include his widow. The remainder over after the death of Horace Smith, the life tenant, is therefore a remainder over to his children, subject to the devise to said widow, and this remainder over to his children gave to Horace Smith Jr. (he being in life at the date of the death of testatrix) a vested remainder, which opens up for the purpose of letting in any after born children of his father Horace Smith (See Milner vs. Gay, 145 Ga. 858), and which also will open up for the purpose of letting in a life estate in favor of such widow as may survive Horace Smith.
"(b) Should Horace Smith die leaving a widow surviving him, such widow will then be vested with a life estate, which she will enjoy, share and share alike, with the children of Horace Smith *Page 377 
as above defined, her life estate being subject to a conditional limitation, namely, to exist `so long as she is of good moral character and name' (See Atlanta Railway Company v. Jackson,108 Ga. 634); and subject to be defeated on a condition subsequent, namely her remarriage.
"(c) It does not appear from the will that testatrix contemplated an intestacy should arise at the time the life estate of such widow might expire or be terminated, and an intestacy will not be presumed. (See Glore v. Scroggins,124 Ga. 922, 926.) Therefore, upon the termination of such widow's life estate, her title in the property would go, share and share alike, to the other `legitimate heirs' of Horace Smith, that is to say, to his children as defined in section (a) above.
"It seems clear to the court that the testamentary scheme of testatrix contemplated that the heirs (children) of her said son should take in preference to Georgia Baptist Orphans' Home and other contingent devisees.
"3. Language in Item Ten, expressing a desire that Horace Smith care for his father J. R. Smith and his uncle John Norman, are precatory words only. It appearing that Emma Upshaw died before testatrix, her $300 legacy lapsed and went into the residuum of the estate. The bequest to Georgia Baptist Orphans' Home at Hapeville, Georgia, is contingent upon the death of Horace Smith without children or widow, as above set forth, or if he leaves a widow only, its vesting in possession is postponed until the termination of the estate in favor of the widow as aforesaid. It appearing from the evidence that there is no such institution as `Home for the Aged at Macon, Georgia,' the contingent devise to that institution (made under the same conditions relating to devise to Georgia Baptist Orphans' Home) will have to be dealt with in equity should occasion arise."
The only exception to the decree is that taken by Horace Smith, as a legatee under the will, and the only contention urged by him is that under the terms of the will he was given the property in fee simple, and that his estate was not limited to that of a life tenant, as ruled by the judge.
A consideration of the express provisions of item ten, as quoted in full in the statement of facts, will reveal unmistakably that the testatrix intended to limit the son's interest to a life estate with specified remainder over at his death. No technical language is needed to create a remainder. Any words that show it was the intention of the creator to create, by one instrument, two or more estates, so that the possession incident to one is temporarily exclusive of the possession incident to another, the law will hold to create an estate in remainder. Here by item ten the income from the property is given to the son to be managed as later specified, the property to go at his death to his legitimate heirs including any widow, to the extent of a life-estate share, but if at his death there should be no children, or widow, then to certain alternative remaindermen. By no means of construction could the specific limitations in remainder to take effect at the death of the son be disregarded so as to thereby enlarge the son's title into a fee-simple estate. See Jones v. Crawley, 68 Ga. 175;Watts v. Finley, 187 Ga. 629, 634 (1 S.E.2d 723). This ruling in no wise conflicts with what was held in Martin v.Citizens Bank of Marshallville, 180 Ga. 741 (180 S.E. 734), since the proposition there involved under the facts of the case is not now before us. In the instant case, the clearest indication of testatrix's intention to create a remainder over after the termination of a life estate in favor of the son lies in the provision whereby she specifically directs that the widow of the son shall be included, but only as a life tenant, along with the legitimate heir of the son to take in remainder at his death.
A life estate being thus clearly indicated by item ten of the will, the question arises, are the provisions of item eleven inconsistent with and controlling over those of item ten; and if so, do the provisions of item eleven enlarge the son's life estate into a fee-simple title, as contended by the son? The Code, § 113-805, provides as follows: "An unconditional gift of the entire income of property or interest accruing from a fund shall be construed into a gift of the property or fund, unless the provisions of the will require a more limited meaning." This court is convinced that a more limited meaning is clearly manifest by the language used in items ten and eleven of the will, nor do we find any inconsistencies *Page 379 
in the two items with respect to what estate was bequeathed to the son. After item ten had plainly limited the estate of the son to a life interest only, with primary and alternative remaindermen, it was sought by item eleven to provide how, when, and under what conditions the custody and control of the property thus bequeathed for life to the son should be turned over to him. Item eleven of the will thus seems to deal not at all with the question of the quantum of the estate which the son would receive under the provisions of the preceding item, but exclusively with the question as to when and under what conditions he should be entrusted with the management and control of the property in which he was given a life estate. A life tenant, if there be one, is entitled to the income from the property accruing during the period of his life tenancy. The fact that the son as life tenant should under the terms of item eleven be paid the income during the period prior to the time designated for his own management and control of the property, does not operate to enlarge the quantum of the estate bequeathed, and in no way conflicts with the previous plain provisions of item ten limiting the son's interest to a life estate only. It is possible to create in a proper case a trust for a life estate only. Seaboard Air-LineRailway v. Simmerville, 142 Ga. 317 (82 S.E. 890). Had no life and remainder estates been specified, then and under such a situation the provisions of the Code, § 113-805, supra, would control a gift of income so as to mean a gift of the property itself. We therefore think that the court correctly construed the meaning and legal effect of items ten and eleven of the will as creating in the son a life estate only. The affirmance of the lower court on this question determines the one controlling issue raised by the exceptions taken in this case.
Judgment affirmed. All the Justices concur.