BUDREAU *v.* MINGLEDORFF *et al.,* executors, *et al.*

No. 17294.  JANUARY 8, 1951.  REHEARING DENIED FEBRUARY 15, 1951.

542

*Cowart & Cowart* and *Reese, Bennet & Gilbert,* for plaintiff.
*Shelby Myrick,* for defendants.

ALMAND, Justice. ■ A trust is executory when something
remains to be done by the trustee, either to secure the property,
to ascertain the objects of the trust, to distribute according to
a specified mode, or some other act, the doing of which requires
the trustee to retain the legal estate. Code, § 108-111. Where
an executed trust is created for the benefit of a person capable
of taking and managing the estate in his own right, the legal
title is merged immediately into the equitable title, and the
perfect title vests in the beneficiary according to the terms and
limitations of the trust. § 108-112. In *Thomas* v. *Crawford,*
57 *Ga.* 211, a bequest was made to one Crawford of certain
property "to be held by him in trust for the following purposes,
towit: the rents, issues, and profits of the same to be paid over
by him annually to William G. Howard during his lifetime, and
at his death, the corpus of said property to be turned over by
the said trustee to the children of the said William G. Howard,
should he leave any children surviving him, and in the event
of his death without leaving any child or children, then it is
my will that said property shall be given to Margaret R. Craw-
ford, if she is alive, and if she be dead, then to go to her chil-
dren," with discretionary power in the trustee to sell any part
of the property during the trust and reinvest; and it was held
to be a valid, subsisting executory trust, with the legal title to
the corpus of the estate remaining in the trustee to keep the

same secure for the contingent beneficiaries, to ascertain who they would be and divide the estate among them when they were ascertained, on the happening of the contingencies contemplated by the testatrix. It was held in *Cushman* v. *Coleman*, 92 *Ga.* 772 (1) (19 S. E. 46), that, "Where the terms of a conveyance by deed to a trustee are large enough to embrace the fee in the premises described, and this fee is carved up into an estate for life in favor of one beneficiary and a remainder in behalf of other beneficiaries, who are uncertain and unascertained, the instrument should be construed as clothing the trustee with full title, and the title as to the remainder should be considered as abiding in him so long, at least, as the identical persons who are to take and enjoy it are not ascertainable. Up to that time, the trust is executory, and the remainder is an equitable, not a legal, estate." In that case, a grantor by deed conveyed property to a named trustee and his heirs in fee simple, in trust for the sole and separate use of a married woman during her natural life, and at her death in trust to be equally divided between such children of her and her present husband as may be in life at her death and the "representatives of any one or more of said children, if any, as may have died before." It was held that such deed passed the fee in the premises to the trustee; that, the persons who were to take in remainder being uncertain and unascertainable until after the death of the life tenant, the remainder was contingent until after the death of the life tenant and could not become vested until after the death of the life tenant; and that the trust was executory and the remainder was an equitable and not a legal estate. In *Sparks* v. *Anderson*, 150 *Ga.* 58 (102 S. E. 423), this court had under consideration the provisions of a will whereby the testator gave to his granddaughter certain property for her sole and separate use for and during her natural life, and upon her death unto such child or children as she might have living at her death, and in default of any child or children living at the time of her death, the lands were to revert to the estate and be equally distributed among his children and their lineal representatives per stirpes. It was held: that this provision of the will created an estate for life in the granddaughter, with remainder to such child or children as she might have living at the time of her death; that, if

she left no such child or children, then in trust to be distributed among the class named in the will; that the trustees appointed in the will were not trustees for the life tenant only, but for the life tenant and the remaindermen; and that the trust was executory at least until the death of the life tenant.

In this same connection, see also *Watts* v. *Boothe*, 148 *Ga.* 376 (1) (96 S. E. 863); *Woodbery* v. *Atlas Realty Co.*, 148 *Ga.* 712 (98 S. E. 472); *Burton* v. *Patton*, 162 *Ga.* 610 (2) (134 S. E. 603); *Duncan* v. *Verner*, 172 *Ga.* 553 (1, 2) (158 S. E. 322).

■ A valid trust may be created in this State for a person sui juris with remainder over in trust to another. *Sinnott* v. *Moore*, 113 *Ga.* 908 (4) (39 S. E. 415); *Palmer* v. *Neely*, 162 *Ga.* 767 (135 S. E. 90). In *Leavitt* v. *Leavitt*, 149 *Ga.* 601 (101 S. E. 670), Leavitt Sr. brought an action against Leavitt Jr., individually and as trustee, to annul and set aside a deed which had been jointly executed by them in trust for certain specified purposes. Leavitt Sr. had by deed conveyed certain property in trust for the support and maintenance of himself and his family, consisting of his son, the grantee, and the son's wife, and for the support of any children that might be born to the grantee; providing for disposition of the property upon the death of the grantor and in the event of the grantee dying childless. The grantor of the trust sought to set aside the deed, on the ground that it was intended to create a trust for a person sui juris and not mentally weak or under any legal disability. It was held that the deed created several estates for persons other than the grantor, including contingent estates for any children that might be born to the grantee, and that the deed could not be set aside and the property restored to the grantor, even if, as to the grantor, it created a spendthrift trust.

■ Though use of the word "heirs" or its equivalent in a grant or devise is not necessary to create an absolute estate, and every properly executed conveyance must be construed as conveying the fee unless a less estate is limited in such conveyance. "If a less estate is expressly limited, the courts shall not, by construction, increase such estate into a fee, but, disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents; and if not, the court may hear

parol evidence to prove the intention." Code, § 85-503. An estate in fee will not be reduced to a life estate by a subsequent limitation in a deed or will, unless the intent to limit is unmistakable. *Thomas* v. *Owens*, 131 *Ga.* 248 (1) (62 S. E. 218); *Moore* v. *Cook*, 153 *Ga.* 840 (2) (113 S. E. 526). So, where a testator gives in one part of his will an absolute estate, and by a subsequent clause expressly cuts down such absolute estate to a lesser estate, the prior gift is restricted accordingly. *Sheftall* v. *Roberts*, 30 *Ga.* 453 (2); *Cochran* v. *Hudson*, 110 *Ga.* 762 (1) (36 S. E. 71). "A testator unquestionably has the power, after having given, in one item of his will, a bequest to a legatee for himself and his heirs forever, to attach a condition, by a later item, under which the property will revert upon a certain contingency. If the contingency did not happen, the legatee would have an absolute title. If it did happen, there would be a reversion." *Lamar* v. *Lamar*, 137 *Ga.* 734, 743-44 (73 S. E. 1057). See also *Patterson* v. *Gaissert*, 147 *Ga.* 472 (94 S. E. 563); *Palmer* v. *Atwood*, 188 *Ga.* 99 (3) (3 S. E. 2d, 63); *Smith* v. *Smith*, 200 *Ga.* 373 (37 S. E. 2d, 367).

■ Since the construction of a will is for the court, the dismissal of the plaintiff's petition on general demurrer means that the trial court construed the will, with reference to the matters in controversy, as contended by the defendants. *Armstrong* v. *Merts*, 202 *Ga.* 483 (1) (43 S. E. 2d, 512).

The main question for determination is: what is the nature and character of the interest of John Miller Budreau in the estate of his father, devised to him under Items 10 and 11 of the will? To ascertain the intention of the testator as to the disposition of his estate under these items, we consider them in relation to the will as a whole.

It is evident from a reading of the entire will that it was the intention and purpose of the testator, in devising the residuum of his estate in Items 10 and 11, to create a trust estate, whereby the legal title to the interest of John Miller Budreau would be vested in the trustees, and the beneficial use of the estate was to be in John Miller Budreau for his life, with the remainder equitable interest to vest in the child or children of the life tenant surviving him, and the legal title would be held by the trustees until such child or children reached the age of 21 (pro-

vided the trustees deemed it for the best interest of such child or children); and, in the event the life tenant died leaving no child or children, such remainder interest would revert to the testator's estate and be delivered by the trustees to the surviving children of the testator; and, in the event they or either of them did not survive the life tenant, then their interest would go to their heirs at law, and if they were minors, the trustees would hold the legal title to their interest during their minority. And it was also the intent of the testator to give such trustees full and complete power to manage said estate during the life of John Miller Budreau, with full power vested in them in their discretion to deliver to him any part or all of his interest in the residue of the estate, or to pay him his share of the income from the residuary estate. As we construe Items 10 and 11 of the will, the testator set up an executory trust, whereby the trustees now hold the legal title to the estate both as to the life estate of John Miller Budreau and the remainder interest. This, because it can not be determined until after the death of John Miller Budreau to whom the remainder interest will eventually go. The management and control of John Miller Budreau's interest in the corpus of the estate is vested in the trustees; and if the life tenant dies leaving a child or children not 21 years of age, the trustees are directed (in their discretion) to act as trustees for the benefit of such child or children until they reach the age of 21 years. If he should die leaving no child or children surviving, and in the event any child or children of the life-tenant's brother or sister should become heirs to the interest of the life tenant, the trustees should act as trustees for such child or children during their minority. We therefore hold that the provisions of Items 10 and 11, as to the interest of John Miller Budreau, do not constitute an executed trust.

In addition to the authorities cited in this opinion, our ruling is sustained by *Sides* v. *Shewmaker*, 188 *Ga*. 672 (4 S. E. 2d, 829). There the testator conveyed the residue of his property to a trustee, for the following uses: "All the residue of my property, of whatever character, real or personal, whether now owned or hereafter acquired, . . I will to Trust Company of Georgia, a Georgia corporation with an office in Atlanta, as trus-

tee, in trust, however, for the following uses: A. The trustee shall pay to my wife during her natural life or widowhood the entire net income from the trust estate, to be used as she in her sole discretion deems best for the support and maintenance of herself. If the net income is insufficient, in the uncontrolled discretion of my trustee, to suitably provide for my wife, then my trustee shall encroach upon the corpus of the trust to such an extent and so often as may be necessary in its opinion to provide ample funds for such purposes. B. Upon the death of my wife all of the income from my property, whether real or personal, shall go to Luella Shewmaker (now 17 years of age) . . to be used as she sees fit, until she reaches 21 years of age. When the said Luella Shewmaker reaches her majority, all of my property, principal and interest, shall be conveyed to her in fee simple." In construing this to be an executory trust, the court said: "A valid trust may thus be created in favor of a minor, not only where the trustee takes the legal title for him in fee simple, but where the trustee takes it in trust for a life-tenant who is sui juris, with remainder over in fee to the minor. In such a case the trust embraces both estates, where it is created for both, and the trustee is empowered to act and manage the property for both."

It is insisted that the provisions of Code § 108-103 are applicable in this case. This section deals with trusts sought to be created by the use of precatory or recommendatory words, and has application where a trust is sought to be *inferred* from the use by the grantor or testator of words of entreaty or persuasion, such as "praying," "requesting," or "recommending" that certain uses be made of his estate, and has no application where the words used are mandatory and the creation of an express trust plainly appears from the deed or will. A mere casual reading of the will of the testator in this case shows that he created an express trust, and that there is no occasion to apply Code § 108-103.

It is contended by counsel for the plaintiff that the discretionary power given by the testator to the trustees—to pay over to his son, John Miller Budreau, "such portion of said corpus for such purpose as they may see fit and deem proper for his best interest, or they may only pay over to the said John

Miller Budreau the interest and income of said corpus, or such part of the said interest and income of said corpus as they may see fit to pay to him"—renders the trust void for indefiniteness; and, even if sufficiently definite to be valid, the trust is invalid because of the unlimited discretion given to the trustees.

Generally, a testator may by will confer upon another person the power to do any act with reference to the property of the testator which he could lawfully have done himself. Redfearn on Wills and Administration of Estates (2d ed.), 369-70, § 209. A testator may leave the time and manner of execution of the trust to the discretion of trustees; and, in the absence of bad faith, they cannot be compelled to exercise the powers granted in the will. Redfearn on Wills and Administration of Estates (2d ed.), 370-71, § 210. Scott in his treatise on Trusts says: "By the terms of the trust it may be provided that the trustee may in the exercise of his discretion terminate the trust. . . More commonly it is provided by the terms of the trust that the trustee may in the exercise of his discretion terminate the trust by transferring the trust property to the beneficiaries or to certain of the beneficiaries of the trust. In such a case the trustee may in the proper exercise of his discretion convey the trust property to the beneficiaries and thereby terminate the trust. The court will not interfere with the trustee in the exercise of his discretion unless he is guilty of an abuse of discretion." 3 Scott on Trusts, 1825-26, § 334.1.

The testator in this case devised his son's interest in the residuary estate to trustees during the life of the son with remainder in trust, for reasons of which he was the sole judge; and these reasons, enumerated in the will, were the son's ill health and incapacity to engage in or manage a business of his own. The testator's will clearly shows that it was his desire for his son not to have the control or benefit of such interest unless he became capable of looking after his interest. The testator no doubt thought that after his death his son might reach a stage where he would be capable of being entrusted with the corpus of his interest; and, in order that such determination might be made, he invested his trustees with authority to make such determination in their discretion. We know of no legal barrier that prevents a testator from having such desire

carried out. A court of equity, in the absence of bad faith or collusion, will not control the exercise of such discretion. Code, § 37-602. The discretionary powers vested in the trustees under the will under consideration are plain and specific, and are such as could be lawfully granted to trustees and performed by them.

In view of these rulings, it becomes unnecessary for us to pass upon the contention of the defendants that the trust created in these items was a spendthrift trust, under Code § 108-114.

It was not error for the trial court to sustain the general demurrers of the defendant and to dismiss the petition as amended.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Atkinson, P. J., who dissent.*